## LAWLOR, RESPONDENT, *v.* KEMPER, APPELLANT

[Submitted May 26, 1897. Decided June 14, 1897.]

*Appeal—Evidence—Instructions in Equity Cases—Harmless Error.*

In an action between partners for a dissolution and an accounting, it appeared from the evidence that the plaintiff and defendant were partners dealing in real estate, most of which was owned by one or both of the partners; that, when a lot belonging to one partner was sold, a commission on the price was credited to the firm; that the defendant, when the partnership was formed, was the owner of an undivided interest in a mining claim which was not excepted from the agreement, which at the time of the firm was valuable only for town lots, but which afterwards became valuable as a mining property and was sold during the partnership, and that, after the part of the purchase price of the mine had been paid, a monthly settlement was made at which nothing was said about a commission on the sale, and plaintiff said nothing about the commission although he knew of the sale; that another monthly settlement was made at which plaintiff paid defendant a small balance—at this settlement nothing was said about a commission on the sale of the mine, and defendant, after the settle-

ment, wrote in the book "March 18, settled in full," but plaintiff testified that he had not seen the entry; that the plaintiff afterwards demanded his share of the commission, to which defendant replied, "No, sir, that commission is too much." *Held*, that there was evidence sufficient to sustain the findings in favor of the plaintiff on this issue, and that an order denying a motion for a new trial would not be reversed.

Alleged error in the admission of the evidence will not be considered when no objection was taken to the same at the trial.

In an action for accounting between partners who were dealing in real estate, the defendant testified that the plaintiff and himself did not deal in mines because neither of them was a mining expert. *Held*, that it was proper cross-examination to ask defendant if he had not testified as an expert at the trial of another cause.

In such a case it was proper to exclude from the evidence a book offered by the defendant and prepared by himself, which he claimed contained all the property which he turned over to the firm.

In a suit in equity, a judgment will not be reversed for error in instructions.

In a suit in equity, a judgment will not be reversed for improper conduct on the part of counsel in commenting on matters not in evidence.

*Appeal from District Court, Silver Bow County. W. O. Speer, Judge.*

Action by William V. Lawlor against Simeon V. Kemper. From an order denying a motion for a new trial, defendant appeals. Affirmed.

Statement of the case by the justice delivering the opinion.

During the year 1891 and a portion of 1892. plaintiff, Lawlor, and defendant, Kemper, were partners dealing in real estate in Butte, Montana, under the name of Kemper & Lawlor. The written agreement of partnership between them provided "that all gains, profits and increase that shall or may come, grow or arise from or by means of said business shall be divided between them share and share alike." It also provided "that at all times during their co-partnership they, and each of them, will give their attendance, and do their, and each of their, best endeavors, and to the utmost of their skill and power exert themselves for their joint interest, profit and advantage."

The firm dealt chiefly in town lots which one or the other of its members owned individually, or to which the two jointly had acquired title. When a lot owned by one of them was disposed of, a commission on the selling price was credited to the firm as a profit. Each owned individually some mining ground. As a firm, also, they acquired some mining prop-

erty, not for the express purpose of dealing in any ores to be extracted therefrom, but rather for the sake of the surface ground of the same for town-lot purposes. At the time they entered into the partnership, Kemper owned a tract of land known as the "Kemper Addition." It was a patented placer claim originally. There being indications of a quartz vein within its boundaries, Kemper had made a location on the quartz therein as the Ground Squirrel lode claim. He did this to prevent any possible question being raised as to the extent of the placer patent. The persons interested in this lode claim were Kemper, his brother and their father and mother; the latter two, however, to a small extent only. Kemper had full authority from his brother and parents to deal with this lode claim as he saw fit. Before the time agreed upon for the beginning of the partnership between Kemper and Lawlor, a contract had been entered into between the owners of the lode claim and one Carter, under the terms of which Carter had acquired the right to purchase within a certain time a certain portion of the claim for the sum of $15,000. After the partnership began, and during its existence, lots were sold in this Kemper addition, and commissions on the sales thereof credited to the firm as profits. It appears that Carter, under his contract, proceeded (with moneys furnished by Kemper alone) to develop this lode claim, and as a result it was demonstrated during the year 1891 that it contained a mine of rich copper ore. Some time in June, 1891, Kemper sold this mine and certain lots in the Kemper addition for $225,000. This price included the $15,000 to be paid by Carter under his contract. This money was paid in installments; the last payment being made some time in July, 1892. The negotiations for the sale of the lode claim consumed a number of days, and, for the most part, were had in the real estate office of Kemper & Lawlor. After some $62,000 in payments were made, on December 26th, Kemper and Lawlor had a monthly settlement of the partnership accounts. At this last-mentioned date nothing was said about Lawlor's right to a part of any commission on the sale of the Ground Squirrel claim, al-

though he (Lawlor), knew what amount of the purchase price thereof had been paid. Another such settlement was had in March, 1892, and the books of the firm contained this memorandum, in Kemper's handwriting : "March 18th, '92. Settled in full to date." At the times of said settlements there was no entry in said books as to the Ground Squirrel lode. Lawlor at the date of said last settlement paid Kemper a balance of $228.40. The December settlement was made before any demand by Lawlor for a commission on account of the Ground Squirrel sale, and the March settlement after such demand. Kemper refused to credit Lawlor or the firm with any commission on the Ground Squirrel lode sale. Thereupon Lawlor instituted suit against Kemper on June 18, 1892.

The complaint contained the following allegations : "That on or about the 7th day of April, A. D. 1890, plaintiff and defendant, at Butte, in the county of Silver Bow, state of Montana, entered into and formed a partnership for the buying and selling of real estate and loaning money, and as general estate agents, under the firm name and style of Kemper & Lawlor, and under certain articles of agreement, a copy of which is hereto annexed, marked 'Exhibit A,' and made part of this complaint, and that they thereafter, on said January 1, 1891, entered upon and commenced to transact the business of such co-partnership under their firm name; that under the terms of the said agreement each partner was to account to the firm for all receipts and commissions on all transactions of every nature, and for all loans or sales made by either of them, be the same collected from sale of their own individual property, or in their transactions for others; that since the commencement of said co-partnership the defendant has wrongfully, and without the assent of the plaintiff, applied some of the money or receipts and profits of their business to his own use, and has refused to account for the same to the plaintiff, and by reason thereof has become indebted to said co-partnership, and impeded and injured the business thereof; that plaintiff has repeatedly requested the defendant to pay said co-partnership the money so received by him and misap-

propriated as aforesaid, or account to said firm therefor, but that defendant has heretofore neglected and refused, and still does neglect and refuse, so to account, and continues to appropriate the same to his own use.'' The prayer of the complaint was for a dissolution of the partnership and for an accounting.

The answer specifically denied the allegations of the complaint. The case was tried to a jury. In the argument of the case before the jury, one of the attorneys for plaintiff persistently commented upon certain evidence which had first been admitted and then excluded by the court. Counsel for defendant objected to this several times, and the court admonished said counsel to desist. But no attention seems to have been paid to the admonition of the court, and the counsel continued to indulge in the comments forbidden.

The court submitted special questions to the jury, and the answers or findings were in favor of plaintiff. The court adopted these findings. The appeal is from an order denying a motion for a new trial, and it also purports to be from the judgment of the court, although the record fails to disclose that any judgment was ever rendered on the findings.

*Forbis & Forbis*, for Appellant.

*John J. McHatton* and *George Haldorn*, for Respondent.

BUCK, J.—The evidence is sufficient, in our opinion, to justify the action of the lower court in adopting the findings of the jury, and making them its own. The sale of the Ground Squirrel lode claim was not essentially foreign to the purposes of the co-partnership, and the evidence as to the general manner in which the business of the firm was conducted and the practical interpretation of their partnership contract by its members, amply sustain these findings. Lawlor states that the entry on the partnership books by Kemper: ''March 18, '92. Settled in full to date.''—was made without his consent or knowledge, and the testimony reasonably supports the conclusion that the settlements of December, 1891, and March, 1892, between the two partners, only pertained to transac-

tions other than the sale of the quartz claim. If Kemper, when he entered into the partnership, had desired to have his quartz claim excepted and treated differently from other real estate and interest therein owned by himself, it was incumbent upon him to have had a clear understanding with Lawlor to that effect. It is apparent from the evidence in the record that, had this lode claim been sold for a much smaller amount of money than it realized, Kemper would have made no objection to crediting the firm with a commission. It is in evidence that, when Lawlor spoke to Kemper about a commission on the sale of this property, the latter replied, "No, sir; that commission is too much," and then he said he would make Lawlor a present. The present that he contemplated, according to the evidence—which the jury believed—amounted to some $250 only. From a casuistic standpoint, a possession of the ability to discharge a just obligation to a fellow man should encourage the performance of the duty. This case, however, serves to illustrate how easily, through wealth, even when acquired in a sudden and unexpected manner, avarice can be substituted for conscience, and human nature made revolting at the very time when all its higher traits are placed in a position to readily assert themselves.

It is objected that evidence as to the sale of this quartz lode was not admissible under the pleadings.

We fail to see on what tenable grounds it was not. The complaint clearly states a cause of action, and the issues raised by the answer fully justified the admission of the evidence. Moreover, appellant made no objection to the complaint by demurrer, or to the pleadings by motion, and there was no objection to the admission of such evidence upon a trial.

It is claimed that the lower court erred in overruling an objection to this question propounded to the defendant on cross-examination : "Did you, or not, in that case [a controversy in the United States land office], swear, as a mining expert, that the ground you examined down there was placer ground and not agricultural ground?"

Possibly the ultimate object of counsel in putting the in-

terrogation was to place before the jury an immaterial matter, but it was not incumbent upon the court to anticipate any such motive, and therefore no error was committed in permitting the question. The defendant on direct examination had stated that the reason why he and his partner did not deal in mines was the fact that neither of them were mining experts.

Appellant offered in evidence a certain book, claiming that it contained a list of all the property belonging to himself which he had turned in to be handled by the firm. It was not a firm book, and it was conceded that the Ground Squirrel lode claim was not listed in it. The lower court did not err in excluding this book from evidence.

Appellant claims that the court gave erroneous instructions. Whether it did or did not, it is unnecessary for us to determine. This was an action for an accounting—a suit in equity. Although the jury made findings, all findings in such cases are advisory only, and must emanate finally from the judge as a chancellor. He alone is responsible for the same. We agree with the Supreme Court of California that where special issues, in an equity case, are submitted to a jury, the instructions given should not be considered on appeal. See *Sweetser* v. *Dobbins*, 65 Cal. 529, 4 Pac. 540; also, *Schneider* v. *Brown*, 85 Cal. 205, 24 Pac. 715, and *Riley* v. *Martinelli*, 97 Cal. 575, 32 Pac. 579. In an equity case, also, when the trial court submits special questions to a jury as to the facts involved, it is only necessary to instruct as to the principles of law applicable to the determination of the particular questions. There is no sound reason for giving instructions covering the whole theory of the law applicable to the facts to be found. Such a practice is supererogatory.

The view we entertain as to the questions of error in these instructions also applies to appellant's objection that one of the attorneys for plaintiff on the trial commented in his argument upon matters not in evidence before the jury. From the bill of exceptions saved, showing that said counsel for plaintiff did this, it clearly appears that the conduct of said counsel in this respect was most reprehensible. It was the

,manifest duty of the trial court to have restrained him from making these comments, if possible. It was also the duty of said court to have punished such conduct summarily, if it could not have been prevented, for the contempt was gross and flagrant. But a different question is piesented here from what would have been presented had this case been an action at law. It must be presumed that the trial judge, sitting as a chancellor, was in no wise influenced in making the findings of the jury his own by any improper argument of counsel.

We are of the opinion that there was no error in the court's refusal to grant a new trial. Although this appeal also purports to be from a judgment, there is no judgment in the record.

*Affirmed.*

Pemberton, C. J., and Hunt, J., concur.