POWER, RESPONDENT, *v.* LENOIR ET AL., APPELLANTS.

[No. 1,004.]

[Submitted January 19, 1899. Decided February 13, 1899 ]

*Motion for New Trial—Notice of Intention—Review—S atement— Reservation of Objection—Limitation—Minors— Guardian ad Litem—Appointment—Nunc pro Tunc Order — Validity.*

| | |
|---|---|
| 22 | 169 |
| d24 | 41 |
| l 24 | 279 |
| 22 | 169 |
| f25 | 373 |
| 22 | 169 |
| e26 | 96 |
| 22 | 169 |
| 27 | 221 |
| 22 | 169 |
| 28 | 445 |
| 22 | 169 |
| 29 | 506 |
| 22 | 169 |
| 31 | 122 |

1.  A party submitting amendments to a statement on a motion for a new trial may reserve his right to object to the settlement or consideration thereof on the ground that the statement was not served in time.
2.  The time for giving notice of intention to move for a new trial in an equity case begins to run from notice of the decision by the court, and not from the return of special findings submitted to a jury.
3.  Where the statement on a motion for a new trial was not served within ten days after notice of intention to move therefor, as required by Code of 'Civil Procedure, Sec. 1173, Subd. 3, and the time was not extended by stipulation or otherwise, no question presented by the statement can be considered on appeal.
4.  Probate Act 1887, Sec. 358, provides that, before the appointment of a guardian for a minor takes effect, the person appointed shall give bond with sufficient sureties. Section 351 authorizes parents to select guardians for their children, but section 362 requires persons so selected to qualify, the same as other guardians. *Held*, that where a father assumed to act as guardian for his minor children without having qualified, and appeared for them in an action concerning property devised to them by their mother, the minors, though legally served, were not bound by the proceedings.
5.  Where a father appeared as guard'an for his minor children without having qualified as their guardian, and defended an action against them with reference to their separate property, a *nunc pro tunc* order appointing him their guardian *ad litem* before judgment rendered against them was unauthorized, and they were not bound by the judgment so entered.

*Appeal from District Court, Lewis and Clarke County; Henry N. Blake, Judge.*

ACTION by T. C. Power against B. O. Lenoir and others. From a judgment for plaintiff, and from an order denying a new trial, defendants appeal. Reversed.

Statement of the case by the Justice delivering the opinion.

This suit was brought for the purpose of setting aside a conveyance by the defendant B. O. Lenoir to his wife, Margaret Ann Lenoir, of certain lots situate in the city of Helena, Lewis and Clarke county, Montana, and also to avoid a will made by Margaret Ann Lenoir, with her husband's consent, in favor of her two daughters, Bessie and Bernice Lenoir, giving them the entire property. The amended complaint alleges, substantially, that on January 17, 1888, the plaintiff and B. O. Lenoir entered into a contract by which Lenoir leased from him a portion of the Steamboat Block, in the city of Helena, Montana, for a term of three years, at a monthly rental of $235, payable in advance; that for the purpose of avoiding the payment to plaintiff of the rents to fall due on November 1, 1890, and thereafter until the expiration of his lease, and for the

purpose of cheating and defrauding his creditors and putting his property beyond the reach of execution, he conveyed to his wife, Margaret Ann Lenoir, through a trustee, the property in controversy; that the same was then worth $15,000; that he also at the same time transferred to her notes and securities worth $2,000; that this conveyance and transfer were claimed by Lenoir and his wife to have been made for a consideration of $3,000, moneys theretofore advanced by Margaret Ann Lenoir to her husband, but that in fact this claim was false, and that the conveyance and transfer were made without consideration; that an action was brought by plaintiff against the said Lenoir on November 1, 1890, in the District Court of the First Judicial District at Helena, Montana, for the purpose of recovering the rent then due under the lease, and to fall due from that time to May 1, 1891, and that on May 1, 1891, a judgment was duly entered in that cause in favor of plaintiff and against the defendant for $2,082.80; that on May 27th thereafter an execution upon the said judgment, put into the hands of the sheriff of Lewis and Clarke county, was returned wholly unsatisfied, for the reason that no property belonging to the said Lenoir was to be found in Lewis and Clarke county; that after the said judgment was so entered the said Lenoir, his wife then being in failing health, caused and directed her to make and execute her will bequeathing all of said property, as well as all other property belonging to her, to their daughters, Bessie and Bernice, he himself consenting thereto in writing, thus intending further to cheat, hinder and defraud his creditors, and particularly the plaintiff; that under said will he was given full authority to dispose of all the said property as he saw fit; that on July 30, 1891, the said Margaret Ann Lenoir died, and that the said husband was by the District Court at Helena, on October 3, 1891, upon his own application, duly appointed executor of said will; that he was thereafter by the same court appointed guardian of the two defendants, Bessie and Bernice, and that he is now acting as both such executor and guardian; that the defendant Lenoir has no property that can be reached by execution; that the

deed from himself to his wife was properly recorded in the office of the clerk and recorder of Lewis and Clarke county, and that both said deed and will are a cloud upon the title of the property conveyed and bequeathed thereby, and prevent the plaintiff from realizing the amount of his said judgment; that the said children, Bessie and Bernice, claim an interest in the property, but that in fact they have none, except under the said deed and will; that all of said property was so deeded by Lenoir and bequeathed by his wife to the said Bessie and Bernice Lenoir with intent in himself and wife both to cheat and defraud the creditors of Lenoir, and to hinder the plaintiff in the collection of his judgment; and that Lenoir threatens to dispose of all the property for the purpose of appropriating the proceeds to his own use.

Lenoir made answer on September 21, 1892, to the original complaint herein, in his own behalf and as executor, and also as guardian of the children. Upon answering the amended complaint he answered generally for all the defendants, without designating himself either as executor or guardian. He took issue upon all the allegations of the complaint, except those as to his executorship and guardianship, the recovery of judgment by plaintiff, and the value of the property conveyed by his deed, which he placed at $3,000.

At the trial, on December 21, 1896, special interrogatories were submitted to a jury, which found, substantially: That the property was conveyed by Lenoir to his wife with intent to hinder, delay and defraud plaintiff; that the consideration for the deed was $2,900; that the property was accepted by his wife with intent to hinder, delay and defraud plaintiff; and that the will was thereafter made by his wife for the purpose, both on her part and that of Lenoir, to hinder, delay and defraud plaintiff.

Upon the coming in of these findings the defendants objected to the entry of a judgment thereon, because upon the trial it had appeared in proof that Bessie and Bernice Lenoir were minors, that B. O. Lenoir had never been appointed their guardian, and that there was no proof in the record that they

had ever been served with process to bring them properly into court. The court thereupon took the findings under advise-ment, with defendants' objections. The proof upon the trial showed that B. O. Lenoir had been appointed guardian of the minors by the District Court at Helena, Montana, on October 3, 1891, but that he had failed to give bond and qualify as such guardian as provided by law. The proof in the record of service of process upon the minors consisted of an alias summons, issued after an order of publication had been properly made under the statute providing for publication of summons for nonresident defendants, with an affidavit by Charles P. Russell that he had made service of a copy of the summons and complaint upon B. O. Lenoir and Bessie and Bernice Lenoir, then residing together at Fort Sully, South Dakota. This affidavit was sworn to before Stephen C. Mills, "1st Lieut. 12th Infty., Judge Advocate, General Court Martial.". It was dated July 23, 1892,—a short time after the original complaint was filed. While the court so had the matter under advisement, and on January 18, 1896, the plaintiff was permitted, without notice to defendants or their attorney, to file a supplemental affidavit by the same Charles P. Russell, setting forth the facts of his service on defendants on July 23, 1892, and sworn to before Francis De Pfuhl, a notary public in and for the County of Cook, State of Illinois. Both affidavits were sufficient in substance and form.

During the trial it appeared that B. O. Lenoir had never qualified as the general guardian of the minors, Bessie and Bernice Lenoir, in that he had failed to give his bond as such. It did appear, however, that he was in the possession and control of the property of said minors, and had from time to time made his reports as guardian to the District Court at Helena of his receipts and expenditures in the management of the estate. After having had the findings under advisement until February 3, 1896, the court, on motion of counsel for plaintiff, and apparently in the absence of counsel for the defendants, appointed B. O. Lenoir guardian *ad litem* for the minors, directing the order of appointment to be entered "*nunc pro tunc*

as of the date the said B. O. Lenoir appeared and filed his an-
swer in said cause as the guardian of said minors, to wit: 21st
day of September, 1892.'' On the same day, without other
proceedings, the findings of the jury were adopted; and the
court, overruling defendants' objection to its entry, entered
judgment for the plaintiff against all the defendants, setting
aside the deed and will, and directing the property to be sold
to satisfy plaintiff's judgment. From this judgment, and from
an order of the court overruling their motion for a new trial,
the defendants appeal.

*T. J. Walsh,* for Appellants.

*Walsh & Newman,* for Respondent.

BRANTLY, C. J.—Counsel for plaintiff object to the con-
sideration by this Court of any question presented by the mo-
tion for a new trial, and ask to have the statement stricken
out on two grounds: That the notice of intention to move
for a new trial was not given in time, and that the statement
was not served in time. The facts appearing in the record
are that the attorney for defendants served a notice of inten-
tion on the attorney for plaintiff on December 28, 1896,
within seven days after the findings by the jury were made
and filed. Nothing further was done under this notice. It
was not filed with the clerk. On February 4th, defendants'
attorney gave notice to counsel for plaintiff that the court on
February 3d had formally adopted the findings of the jury
and entered judgment for plaintiff. On February 11th de-
fendants' attorney properly served and filed with the clerk
another notice of intention to move for a new trial. On
March 21st he served his statement upon counsel for plaintiff,
who thereupon submitted amendments, but, before doing so,
reserved their right to object to the settlement of the state-
ment, or any consideration of it, because it had not been
served in time. It is not disclosed whether the amendments
were agreed to by the defendants' counsel or not. On April
8th the court settled the statement, incorporating therein all

amendments proposed by plaintiff's counsel, except one, and
also his objections to the settlement.    This was done without
notice.    No stipulation was made between the parties, nor
order of court, extending the time for serving the statement.
The motion for a new trial was overruled on June 22, 1896.

Plaintiff's objections to the statement were properly re-
served.    (*Sweeney* v.  *G. F. & C. Ry. Co.*,  11 Mont. 34, 27
Pac. 347.)   Counsel insist that, to have any efficacy as a
basis for a motion for a new trial, the notice of intention
should have been served and filed with the clerk within 10 days
after December 21, 1896; citing Code of Civil Procedure,
Section 1173.    We do not think this position tenable.    This
cause is one involving questions cognizable in equity only.
The parties are not entitled in such cases to a trial by jury.
If the court calls a jury to aid in the trial, the findings made
by the jury are advisory only.    The judgment must emanate
from the judge.    The jury serves to enlighten his conscience,
not to control his judgment.    The trial is a trial by the judge,
and the decision reached is his.    He will adopt the findings of
the jury, if they satisfy his conscience; otherwise, he will dis-
regard them and make such findings as will do so.  (*Gallagher*
v. *Basey*, 1 Mont. 457; s. c. on appeal, 20 Wall. 670; *Mantle*
v. *Noyes*, 5 Mont. 274, 5 Pac. 856; *Beck* v. *Beck*, 6 Mont.
318, 12 Pac. 694; *Leggat* v. *Leggat*, 13 Mont. 190, 33 Pac.
5; *Zickler* v. *Deegan*, 16 Mont. 198, 40 Pac. 418; *Lawlor* v.
*Kemper*, 20 Mont. 13, 49 Pac. 398.)   In states where this
doctrine prevails, the rule is that the notice of intention must
be served within 10 days after the parties have notice that the
court has announced its decision and directed judgment.
(Haynes, New Trials & App. Secs. 18, 234.)   While object-
ing strenuously to this doctrine, the learned author last cited
(Section 234, *supra*) states that the great weight of authority
is in its favor.    The doctrine announced in the cases *supra*
having become the settled rule in this State, the time for giv-
ing notice, therefore, begins to run from notice of the decision
by the court.    The notice of intention served in this cause
was therefore clearly in time.    But we cannot say so much

for the statement. In 'the absence of a stipulation between the parties, or an order of court, extending the time, it should have been served within 10 days from February 11th. (Code of Civil Procedure, Section 1173, Subdivision 3.) This was not done. Therefore this Court must disregard the statement and all the questions sought to be presented thereby.

But, notwithstanding the statement on motion for a new trial cannot be looked to for any purpose, a separate bill of exceptions is contained in the record, which was used on the motion for a new trial. In this defendants preserved their objections and exceptions to the action of the court in adopting the findings of the jury, while there was no proof in the record that the defendant minors, Bessie and Bernice Lenoir, had been properly served with process and in appointing B. O. Lenoir their guardian *ad litem,* and then entering judgment against them without further proceedings looking to an appearance for them.

For the purposes of this investigation it is not necessary to decide whether, under the provisions of our statute (Comp. St. First Div. Sec. 74), it was the fact of the service of summons, or the filing of the proof in the record that gave the court jurisdiction over the persons of the minors; for, while it is true that the affidavit made by Charles P. Russell before an officer of the United States army was no proof of such service (*Id.* Sec. 673), the supplemental affidavit filed on January 18, 1896, supplied the necessary proof, and from that time the record was complete. We shall only consider the action of the court with reference to the appointment of the guardian, for upon the action of the court below in this regard rests the integrity of the judgment rendered.

The Compiled Statutes of 1887, in Sections 9 and 10 of the First Division, provide:

Section 9 : "When an infant is a party he shall appear by guardian, who may be appointed by the court in which the action was prosecuted, or by a judge thereof, or a probate judge."

Section 10 : "The guardian shall be appointed as follows:

\* \* \* When the infant is defendant, upon the application of the infant, if he be of the age of fourteen years, and apply within ten days after the service of the summons: if he be under the age of fourteen, or neglect so to apply, then upon the application of any other party to the action, or of a relative or friend of the infant."

The Probate Practice Act of 1887 provides:

Section 351 : "The probate judge of each county, when it appears necessary or convenient, may appoint guardians for the persons and estates or either or both of them, of minors who have no guardians legally appointed by will or deed and who are inhabitants or residents of the county, or who reside without the territory and have estate within the county. \* \* \*"

Section 358 : "Before the order appointing any person guardian under this chapter takes effect, and before letters issue, the judge must require of such person a bond to the minor, with sufficient sureties, to be approved by the judge, and in such sum as he shall order, conditioned that the guardian will faithfully execute the duties of his trust according to law. \* \* \*"

Section 362 : "Every testamentary guardian must give bond and qualify, and has the same powers and must perform the same duties, with regard to the person and estate of his ward, as guardians appointed by the probate court, except so far as their powers and duties are legally modified, enlarged or changed by the will by which such guardian was appointed."

Section 363 : "Nothing contained in this chapter affects or impairs the power of any court to appoint a guardian to defend the interest of any minor interested in any suit or matter pending therein."

Section 368 : "Every guardian must settle all accounts of the ward and demand, sue for, and receive all debts due to him; \* \* \* and he must appear for and represent his ward in all legal suits and proceedings, unless another person is appointed for that purpose as guardian or next friend."

All these provisions are copied, substantially, into the Code of 1895. (Code Civ. Proc., Sections 574, 575, 2957, 2959, 2960.)

Under the provisions of Sections 9 and 10, *supra*, a minor can appear in a suit only by guardian. Under the provisions of the Probate Practice Act (Section 368 *supra*), a general guardian may—indeed, he must—appear for his ward in all suits and other legal proceedings and make proper defense, unless the court appoints some other person for that purpose. B. O. Lenoir, the father of these minors, did appear for them as their general guardian; but was he their guardian? Under the facts appearing in this record he was appointed such by the order of the District Court at Helena on October 3, 1892. He acted as such until the trial of this·cause, by controlling the property of the minors, and filing his accounts with the court under the legal requirement, but he had failed to give bond before entering upon his duties. Counsel for plaintiff insist that his appointment and recognition by the court so far constituted him the legal guardian that his acts are valid and binding upon his wards. We are aware that it has been held by the Courts in some of the states that the giving of a bond is not indispensable to the validity of the acts of the guardian. The decisions are not in harmony. In Alabama, Georgia, Kentucky and North Carolina it has been held that a failure on the part of the guardian to comply with the statute in this regard does not impair the validity of his acts, and the judgments of the courts based upon them. ( *Cuyler* v. *Wayne*, '64 Ga. 78; *Leatherwood* v. *Sullivan*, 81 Ala. 458, 1 South. 718; *Ex parte Maxwell*, 37 Ala. 362; *Howerton* v. *Sexton*, 104 N. C. 75, 10 S. E. 148; *Mobberly* v. *Johnson's Ex'rs*, 78 Ky. 273.) But the great weight of authority sustains the view that the provisions of such statutes are mandatory and that a neglect to comply with them renders void all acts of the guardian, in so far as they conclude the rights of the wards. ( *Pryor* v. *Downey*, 50 Cal. 388; *Murphy* v. *Superior Court*, 84 Cal. 592, 24 Pac. 310; *Wadsworth* v. *Connell*, 104 Ill. 369; *Wuesthoff* v. *Insurance Co.*, 107 N. Y. 580,

14 N. E. 811; *Hatch* v. *Ferguson*, 57 Fed. p. 969; Woerner, Guardianship, Sec. 39).

*Hatch* v. *Ferguson*, *supra*, was a suit brought by the minor heirs of Ezra Hatch, deceased, by next friend, to avoid a judicial sale of lands bequeathed to them by their father. One Hewitt had instituted suit in 1891 to sell the land for partition purposes, claiming to be the owner of an interest therein. The minors were made defendants as the owners of other interests. They were served with process. Ferguson appeared for them as their guardian. He had been appointed by the proper court, and was acting as their guardian, but had never given bond. The provisions of the Code of the Territory of Washington then in force are very similar to the sections of the Probate Practice Act cited *supra*. A decree was rendered by the Superior Court of Washington directing the sale of the lands as prayed for, and Hewitt became the purchaser. Afterwards he conveyed to innocent parties. In passing upon the validity of the acts of Ferguson as guardian, Justice Hanford said: "These provisions of the statute are, in my opinion, mandatory, and the giving of a bond is prerequisite to the assumption by any person of the guardianship of minors in this state, whether under an appointment by will, or by the court having probate jurisdiction." This cause was heard in 1895 by the Circuit Court of Appeals. (15 C. C. A. 201, 68 Fed. 43.) Judge Gilbert, who delivered the opinion, said, in construing these statutory provisions: "It was evidently contemplated that in the creation of guardianships two steps, equally indispensable, should be taken: First, the appointment; second, the giving of the requisite security by the guardian so nominated,—and that the appointment without the bond, and the bond without the appointment, would be equally impotent to create the official relationship of guardian and ward. It is not the policy of the statute to extend to the purchaser at a guardian's sale the protection which in many instances is accorded to the innocent purchaser. The protection of the minor is deemed of the first importance. It is intended that the purchaser of the minor's property shall be placed

upon inquiry to ascertain that the antecedent steps have been taken in accordance with the law. It is within the power of all to know whether the person who assumes to act as guardian is in fact clothed with the powers of that office. An inspection of the record in this case would have shown that Ferguson could not lawfully represent the Hatch heirs without first giving a bond, and that he had wholly failed to comply with the law in that regard. Notwithstanding the judgment of the probate court appointing the guardian, and the judgment of the superior court decreeing and confirming the sale, his acts are void, and may be so declared in any court having jurisdiction of the subject-matter and the parties to the suit."

In *Wuesthoff* v. *Insurance Co.*, *supra*, the Court construed the statute of New Jersey which provided "that every guardian appointed by last will or testament should before the exercise of any authority declare his acceptance to the proper court and give bond in such sum as the court might order, unless it was otherwise directed by the will." Andrews, J., in delivering the opinion, said: "Obviously, the object of the legislature in requiring the guardian to give security was the protection of the ward. The legislature was dealing with the interests of a class especially entitled to the protection of the law. It was a wise safeguard to require that a guardian, before intermeddling with the estate of the ward, should give security for its faithful administration, unless the parent dispenses with this precaution."

Section 358 of our probate law plainly and positively provides that before the order appointing any person guardian takes effect, and before letters issue, the judge must require of such person a bond to the minor, with sufficient sureties. The intention of the legislature could hardly have been more plainly manifested. From the other sections of the statute cited *supra*, it appears that it did not even deem it wise to allow the parent to relieve the guardian of this duty by testamentary direction; for, though a provision is made recognizing the right of parents to select by will the person to whom they wish to intrust the care of their children and their es-

tates (Section 351, *supra*), yet it requires such person so selected (Section 362) to give bond and qualify as other guardians. It is not, therefore, the recognition by any court of the relation of guardian and ward that gives it validity, but the fact that the relation has been properly established by a compliance with the requirements of the law. A person who purchases the property of a minor, or who seeks to devest him of title to his property, will not be heard to say that the minor is estopped and concluded by the irresponsible acts and doings of some person who has presumed to act as his guardian without first giving the minor the protection and security the law requires for him. It is true, the self-appointed guardian will not be heard to say that he is not responsible to his ward for intermeddling with the ward's property. He will be held to strict account, but no act on his part will in any wise prejudice the rights of the ward. The latter is, so to speak, the special favorite of the courts, and the courts will always see that his rights are protected. The appearance in this case of the defendant B. O. Lenoir on behalf of the minor children was unauthorized. Anything done in that behalf by him is of no avail to bind or conclude them.

Nor do we think his appointment as their guardian *ad litem*, in his absence, on February 3, 1896, and the entry of judgment without any other appearance for them, a sufficient compliance with the law. It was an attempt to give force and efficacy to proceedings which up to that time, and so far as the minors are concerned, were utterly void. The order *nunc pro tunc* could give no validity to proceedings which had no validity. So far as the court knew, the minors were not before it by proper process, and during the trial it became apparent that they had made no proper appearance. It cannot be maintained upon any correct principle that the mere putting into the record the proper proof that process had been served upon them nearly four years before, and the appointing a person guardian *ad litem*, in his absence, by an order relating back to the time of his first unauthorized appearance for the minors, was in any sense of the word a proper defense for them.

The court may in all proper cases enter orders and judgments *nunc pro tunc*. It is a matter of frequent occurrence. It is a necessary practice to secure to litigants their rights and prevent injustice. Cases are not infrequent where this has been done after the lapse of many years. (*Parrott* v. *McDevitt*, 14 Mont. 203, 36 Pac. 193, and authorities cited; *Territory* v. *Clayton*, 8 Mont. 1, 19 Pac. 293.) The cases in which the court will do this are of two classes: The first consists of those in which one of the parties dies after the verdict has been rendered, or the cause submitted for decision, and it is necessary to enter the judgment as of the date of the submission of the cause, to prevent injustice. This is done because the delay is caused by the court, and the suitor is not to be injured thereby. The second class is composed of those cases where an order or judgment has actually been made or rendered by the court, but, by reason of some misprision for which the parties are not entirely to blame, has never been entered. (Freeman on Judgments, Secs. 56–61.) The following authorities may also be cited: *Reid* v. *Morton*, 119 Ill. 118, 6 N. E. 414; *Rugg* v. *Parker*, 7 Gray, 172; *Benedict* v. *State*, 44 Ohio St. 679, 11 N. E. 125; *Ex parte Jones*, 61 Ala. 399; *Ex parte Beard*, 41 Tex. 234; *Shephard* v. *Brenton*, 20 Iowa, 41; *Burnham* v. *Dalling*, 16 N. J. Eq. 310; *Vroom* v. *Ditmas*, 5 Paige Ch. 528; *Clay* v. *Smith*, 3 Pet. 411; *Perry* v. *Wilson*, 7 Mass. 393; *Wilson* v. *Myers*, 15 Am. Dec. 510; *Ryghtmire* v. *Durham*, 12 Wend. 245. In none of these cases can we find any authority for the order entered in this cause.

Counsel for plaintiff cite the following authorities in support of the order: *Rima* v. *Rossie Iron Works*, 120 N. Y. 433, 24 N. E. 940; *Tobin* v. *Cary*, 34 Hun. 431; *Wolford* v. *Oakley*, 43 How. Prac. 118; *Millbank* v. *Bank*, 3 Abb. Prac. (N. S.) 223; *Fellows* v. *Niver*, 18 Wend. 563. But a careful examination of them fails to show that they furnish any authority for it. In the case of *Rima* v. *Rossie Iron Works* (a New York case) a minor had brought suit. After the pleadings were made up, and the case was on trial, the fact of the

infancy was disclosed.    A motion for nonsuit was made.  This
was denied by the court, and an order *nunc pro tunc* was made
appointing a guardian *ad litem*.    The cause was then allowed
to proceed.    The Court of Appeals held that under the prac-
tice of New York it was too late, after plea, to make the ob-
jection.    Moreover, there is a provision of the Code of Civil
Procedure of that state which provides that, where a verdict
has been rendered, the judgment should not be stayed, im-
paired or affected by reason of the appearance by an attorney
of an infant party, if the verdict or judgment is in his favor.
To the same effect are the other cases cited.

The court will, in its discretion, make any such order in
favor of a minor not violative of established principles of law;
but we have been unable to find any case in which the court
indulges in any presumption against the minor.    In the case
under consideration the infants were sought to be devested of
their title to the property in controversy.    They were left
without lawful defense or representation.    This was due to
the failure on the part of plaintiff's counsel and the court to
see that they were represented.    It was not for the court to
say, after the trial was over, and when he was about to an-
nounce the judgment taking from them the property left them
by their mother, that the father, whom he was also about to
convict of fraud and wrongdoing, had given them the defense
the case deserved and the real facts warranted.

The judgment of the District Court will therefore be re-
versed, and the cause remanded, with direction to grant a new
trial.

*Reversed and remanded.*

HUNT and PIGOTT, JJ., concur.