YELLOWSTONE NATIONAL BANK, RESPONDENT, *v.* Mc-CULLOUGH ET AL., APPELLANTS.

(No. 3,584.)

(Submitted January 6, 1916.   Decided January 22, 1916.)

[154 Pac. 919.]

*Equity — Deeds Absolute — Mortgages — Foreclosure—Fraud— Mistake — Recordation of Instruments — Effect—Findings— Refusal to Submit—Not Error.*

Equity Cases—Review—Insufficiency of Evidence—Record.
   1.   To enable a review of the question of the sufficiency of the evidence to sustain the findings of the trial court in an equity case, all the evidence must be included in the record.

Same—Mortgages—Foreclosure—Evidence—Fraud—Mistake.
   2.   Evidence in a suit to have a deed absolute foreclosed as a mortgage, *held* not to sustain an allegation of fraud or mistake in its execution.

Same—Recordation—Estoppel.
   3.   Where the grantee, under a deed absolute which he sought to foreclose as a mortgage, had placed the instrument on record prior to the time his grantor had conveyed to defendant, he was not estopped to claim a lien on the property by remaining silent, with knowledge

· that the grantor was negotiating with defendant and thus permitting him to complete the transaction; by having the deed recorded he had done all required of him as to giving notice.

[As to estoppel by acquiescence, see note in 134 Am. St. Rep. 1024.]

Same—Recordation—Estoppel—Evidence—Immateriality.

4. Under the circumstances as set forth in paragraph 3, *supra*, evidence that at the time defendant was negotiating with plaintiff's grantor, and for some time thereafter, the latter was responsible financially but subsequently became bankrupt, was immaterial, since, by recording his deed, plaintiff's obligation to the public as to notice was performed, and his right could not be affected by the grantor's subsequent insolvency.

Same—Recordation—Evidence of County Clerk—Immateriality.

5. Evidence that the defendant had made inquiry of the county clerk to ascertain whether his immediate grantor could give title, and that the clerk informed him that his title was good, was inadmissible, since the plaintiff could not be bound by a negligent act of the clerk.

Same—Findings—Refusal to Submit—Not Error.

6. The judge in the trial of an equity case may call a jury to decide issues of fact; if he does so, he may submit such issues as he chooses for answer, and error cannot be predicated on his refusal to submit certain requested findings, since the act of the jury in such case is only the act of the judge, and, when adopted by the judge, is considered as emanating from him, and not from the jury.

*Appeal from District Court, Yellowstone County; Geo. W. Pierson, Judge.*

ACTION by the Yellowstone National Bank, a corporation, against John McCullough and others. Decree for plaintiff, and the defendants John McCullough and M. B. Dutton appeal. Affirmed.

*Messrs. Nichols & Wilson,* for Appellants, submitted a brief, and argued the cause orally.

The record discloses that McCullough was adjudicated a bankrupt on April 19, 1912. In all cases of estoppel it is necessary for the party relying upon it to show that by reason of the facts constituting it, he has been misled to his injury.

This rule is of like universal application (16 Cyc. 744, and cases cited), and the testimony to have been elicited would have shown that Dutton, through the failure of the bank to assert any claim to the property, had been placed in a position where he would lose all. (*Meister* v. *Birney,* 24 Mich. 435.) It is enough

that the conduct of the plaintiff operated to Dutton's prejudice. (*Heyn* v. *O'Hagen,* 60 Mich. 150, 26 N. W. 861.)

The bank stood by and encouraged a deal by which Dutton might lose everything he had, and in so doing its encouragement to McCullough and silence as to Dutton was as misleading as any direct personal representation could have been. Under such circumstances Dutton's failure to inform himself of the state of the record was excused, and his efforts in that direction should be permitted to be shown. "One who claims the benefit of an estoppel on account of representations made must show that he was ignorant of the truth, and acted in reliance upon the representations. But to defeat the estoppel on that ground, actual and not constructive knowledge is necessary." (*Graham* v. *Thompson,* 55 Ark. 296, 29 Am. St. Rep. 40, 18 S. W. 58; *Dodge* v. *Pope,* 93 Ind. 480; *David* v. *Park,* 103 Mass. 501; Bigelow on Estoppel, 627.)

Where an owner of land which is offered for sale stands by and with knowledge of his title encourages the sale, or does not forbid it, and another person, in ignorance of the true title, is induced to make the purchase under the supposition that the title is good, he is bound by the sale, and he cannot dispute the purchaser's title. (*Haun* v. *Martin,* 48 Or. 304, 86 Pac. 371; *Davis* v. *Tingle,* 47 Ky. (8 B. Mon.) 539; *Dickerson* v. *Colgrove,* 100 U. S. 580, 25 L. Ed. 619.) Where a party having an equitable interest in lands assents to and aids in the disposition of the legal title thereto, he is estopped, after the purchasers from the holders of the legal title have through his inducement changed their position from asserting his equitable claims on the legal title. (*Kelley* v. *Repetto,* 62 N. J. Eq. 246, 49 Atl. 429.)

*Messrs. Johnston & Coleman,* for Respondent, submitted a brief; *Mr. W. M. Johnston* argued the cause orally.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Prior to September 3, 1908, the defendant John McCullough and his wife, Florence, became indebted to the plaintiff in the

sum of $3,700 for borrowed money. This indebtedness was evidenced by two promissory notes, one for $2,200, and the other for $1,500. At the time these notes were executed it was understood and agreed between the parties that security would presently be furnished by McCullough and his wife for the entire amount. McCullough was then the owner of six lots, with the buildings and improvements thereon, in the town of Joliet, in Carbon county, and thirty unimproved lots in the town of Laurel, in Yellowstone county. For convenience, the first-mentioned property will hereafter be referred to as the Joliet property, and the second as the Laurel property. On September 3 McCullough and his wife took up the two notes held by the plaintiff, substituting therefor their note for $3,700, the amount of both, due one year from that date, with interest at the rate of ten per cent per annum. At the same time they executed and delivered to the plaintiff their warranty deed to all the property referred to above. This deed was designed to operate as a mortgage security; it being orally agreed that upon the payment of the note the plaintiff would reconvey the property to McCullough. The deed was recorded in Yellowstone county on October 8 and in Carbon county on December 29, 1908. On March 6, 1909, McCullough and his wife by warranty deed conveyed to the defendant M. B. Dutton the Joliet property in exchange for 160 acres of farming land in Carbon county. No part of the indebtedness due upon the note having been paid, except the sum of $500, paid on March 17, 1909, the plaintiff brought this action to obtain a decree directing a sale of the property to satisfy it. The complaint, besides alleging the facts necessary to obtain the foreclosure, alleges further that on July 5, 1911, in order to protect its security, the plaintiff was compelled to pay the taxes upon the property for the years 1908, 1909 and 1910, together with penalties for delinquency, amounting to $84.74; that on December 2, 1911, it was compelled to pay the taxes for that year, amounting to $30.61; and that on November 6, 1912, to prevent the possible impairment of the security by fire, it had the buildings on the Joliet property in-

sured at a cost of $21. It is demanded that out of the proceeds of sale of the property the plaintiff be reimbursed in these amounts, with interest from the dates at which they were respectively paid. Of the several persons named as defendants, none appeared except McCullough and Dutton, who filed separate answers. Not seriously controverting any of the allegations of the complaint, they allege three separate affirmative defenses, denials of which by the plaintiff's reply present the issues which were determined by the trial court. McCullough alleges in substance: (1) That as security for the payment of the note described in the complaint he agreed to give and the plaintiff agreed to accept a deed to the Laurel property; that, contrary to this express agreement, and without the knowledge of this defendant, the scrivener who prepared the deed included therein the Joliet property also; that in this particular the deed as written and executed did not express the agreement and intention of the plaintiff and the defendant; and that this defendant would not have executed and delivered it had he known of the mistake. (2) That prior to September 3, 1908, he was indebted to the plaintiff in a sum which, with the exception of accrued interest, was the same as the indebtedness mentioned in the complaint; that the plaintiff held as security for it an unrecorded warranty deed from him and his wife to the Joliet property; that on or about that date, having an opportunity to exchange with the defendant Dutton this property, or a portion thereof, for farming lands in Carbon county, this defendant conferred and advised with the plaintiff respecting the exchange; that thereupon the plaintiff "permitted, advised, and directed" him to effect the exchange, and agreed that, if the exchange should be made, it would release its lien upon the Joliet property under the unrecorded deed, and would accept as security in lieu thereof a lien upon the Laurel property that, relying upon this agreement, the defendant entered into an agreement with Dutton to make the exchange, and thereupon so informed the plaintiff; that thereafter, on September 3, 1908, to effect the agreement between the plaintiff and this defendant, a new deed was pre-·

pared by the plaintiff, which was thereupon executed by this defendant and his wife; that it was then understood by defendant that this deed contained only a description of the Laurel property; that, in reliance upon the direction and advice of the plaintiff and his agreement relating to the Joliet property, this defendant conveyed to Dutton by warranty deed all the Joliet property; that Dutton thereupon entered into possession thereof, claiming it under this deed; and that plaintiff, by reason of the premises, is estopped to assert any lien upon or interest in the Joliet property. (3) That the deed of September 3, 1908, was prepared under the direction of the plaintiff; that the plaintiff fraudulently and wrongfully caused to be inserted therein the description of the Joliet property; and that thereafter, without knowledge of the fact that the Joliet property had been included therein, he executed and delivered the deed to the plaintiff. The prayer is that this deed be reformed so as to express the true intention of the parties, and that a decree of foreclosure be granted as to the Laurel property only. In his answer Dutton relies upon the foregoing, supplementing the facts alleged as an estoppel by the addition of the following: That the plaintiff, with the knowledge that it held the record title to the property described in the deed of September 3, 1908, and with the knowledge that McCullough intended to exchange the Joliet property for the farming property owned by this defendant, advised and permitted McCullough to make the exchange, he being then financially responsible, and this defendant to occupy and improve the property without the assertion of any title thereto, for a long time after McCullough's debt was due; that at no time during the pendency of the negotiations between McCullough and this defendant, nor for years after he had conveyed his lands to McCullough, did this defendant have any knowledge of the deed to the plaintiff; that in his negotiations with this defendant McCullough relied upon the conduct of the plaintiff in advising and directing him to make the exchange, and the agreement of the plaintiff to release the Joliet property and accept in lieu thereof a lien upon the Laurel property; that he

would not otherwise have conveyed the Joliet property to this defendant; and that on April 19, 1912, the defendant McCullough was adjudged a bankrupt.

The court found: (1) That it was agreed and understood that the deed to the plaintiff should include both the Joliet and Laurel property; (2) that there was no mistake in the drafting or in the execution of it; (3) that the descriptions of the property to be included in it were furnished to the attorney who drew the deed by McCullough himself; (4) that prior to the execution of the deed the plaintiff did not hold any deed to the Joliet property as security for any debt; (5) that the plaintiff knew that defendant was negotiating with Dutton for an exchange of the Joliet property for the farming property; (6) that plaintiff did not agree to accept a deed to the Laurel property in lieu of the Joliet property; (7) that the plaintiff first learned of the conveyance to Dutton on or before (about?) May 2, 1911; (8) that the plaintiff "advised and directed" McCullough to make the exchange with Dutton; (9) that McCullough did not sign the deed to plaintiff with the understanding that it would accept the Laurel property as security; (10) that the deed was prepared under plaintiff's direction; (11) that it was executed as security for the payment of the note signed by McCullough and his wife; (12) that the plaintiff, to protect its security, was compelled to pay as taxes the amounts alleged in the complaint for the years 1908, 1909, 1910 and 1911; and (13) that in accepting the conveyance from McCullough, Dutton did not rely upon any representation by the plaintiff or any agreement between it and McCullough, but accepted it with constructive notice of plaintiff's deed. Upon these findings it was adjudged that the plaintiff was entitled to recover from McCullough and wife the amount of the note, the taxes paid as alleged in the complaint, and counsel fees to the amount of $300, and to have a decree of foreclosure as against all the defendants. The appeal is from the decree.

Counsel for the plaintiff challenge the right of the defendants to have the appeal heard on the merits, for the reason that

it appears from the transcript that much evidence of a substantial character was not incorporated in the bill of exceptions, and therefore this court cannot fairly determine the propriety [1] of the findings. The evidence in question consists of some thirty exhibits in the form of letters exchanged between A. L. Babcock, the president of the plaintiff, and McCullough, after the former had been informed of the conveyance to Dutton, and letters exchanged between plaintiff's counsel and McCullough upon the same subject. With one or two exceptions, these were admitted without objection and as a part of plaintiff's evidence in rebuttal. The contention has merit, for the reason that the principal argument of counsel for defendants in this court is that the findings are not justified by the evidence, and it does not appear from the recital in the bill of exceptions or from the certificate of the presiding judge that the bill embodies all of the evidence introduced at the trial. So far as this court is informed, these letters may have made such disclosures in the way of admissions by McCullough as to render it impossible for the trial court to find otherwise than it did. The statute imposes upon this court in this class of cases the duty to review and determine all questions of fact arising upon the evidence, as well as questions of law (Rev. Codes, sec. 6253) ; but this we cannot safely do unless all the material evidence is embodied in the record. The extent of review required, so far as it includes the evidence, is not to try the case *de novo,* but, as we have frequently said, to make such examination and to reach such conclusion as in the nature of things is permissible upon the printed record, unaided by observation of the demeanor of the living witnesses as they gave their testimony. (*Finlen* v. *Heinze,* 32 Mont. 354, 80 Pac. 918; *Copper Mt. Min. Co.* v. *Butte & Corbin Co.,* 39 Mont. 487, 133 Am. St. Rep. 595, 104 Pac. 540; *Gibson* v. *Morris State Bank,* 49 Mont. 60, 140 Pac. 76.) Furthermore, we have as frequently held that we cannot consider the question of insufficiency of the evidence to sustain the findings or verdict, when it does not appear, either positively or inferentially, that the record contains all the material evidence introduced at the

trial or the substance of it relating to the particular question of fact at issue. (*Stevens* v. *Ravalli County,* 25 Mont. 306, 64 Pac. 876; *Landt* v. *Schneider,* 51 Mont. 15, 77 Pac. 307; *King* v. *Pony Gold Min. Co.,* 28 Mont. 74, 72 Pac. 309; *Currie* v. *Montana C. Ry. Co.,* 24 Mont. 123, 60 Pac. 989; *State* v. *Shepphard,* 23 Mont. 323, 58 Pac. 868.)

But, assuming that the omitted evidence was without probative [2]   value, after a careful study of so much as is found in the record, we cannot say that it preponderates against the findings. As to the allegation of mistake in the execution of the deed of September 3, 1908, McCullough testified that prior to this date, being indebted to the plaintiff in the amount of the notes referred to in the statement, he and his wife had executed to the plaintiff as security a warranty deed to the Joliet property; that it had been agreed that the bank should for the time not put this deed upon record, in order that McCullough's credit would not be impaired; that this deed had been prepared by Mr. Waldron, the cashier of the bank, and acknowledged before him as a notary; that, while this condition of affairs prevailed, he informed Babcock that he was engaged in negotiating an exchange of the Joliet property for the Dutton farm; that it was thereupon agreed between him and Babcock that the bank would accept a deed to the Laurel property in lieu of the Joliet property; that he brought his deed to the Laurel property to the bank and left it with Babcock in order that he might have the new deed prepared; that he returned on September 3 to execute it; that, relying on the promise of Babcock, he signed the new deed prepared by the direction of Babcock without reading it, and thereupon sent it to his wife at Minneapolis, Minnesota, to have her execute it. He is corroborated to some extent by the statement of Dutton that, when Dutton first obtained actual knowledge of the deed from McCullough to the bank, he went with McCullough to see Babcock to ascertain whether Babcock would agree to make some adjustment of the matter, so that he would not suffer loss, and that Babcock then admitted that he had agreed to release the Joliet property. These statements are

categorically and positively denied by Babcock. He testified that McCullough had not been indebted to the bank for any amount prior to August 20; that on that day he obtained the loan for $2,200; that, not knowing then how much money he would need, it was agreed that later, after ascertaining the amount required, he would obtain it, and then give security for it upon his real estate; that on August 24 he obtained $1,500; that he did not execute any deed to the bank or give any security other than the personal notes of himself and wife; that it had been expressly agreed that the security, when given, would be in the form of a mortgage or deed, including both the Joliet and Laurel property; that the deed was prepared by Mr. Johnston, the attorney for the bank, and delivered to it by him or from his office; that prior to this time McCullough had stated that he was negotiating for an exchange of the Joliet property for that of Dutton, and Babcock had advised him that he thought the exchange ought to be made, as he (Babcock) thought well of the Dutton property; and that he had nothing to do with the preparation of the deed further than to refer McCullough to Mr. Johnston. He stated positively that the bank had never before that time had in its possession any mortgage or deed from McCullough for security for a loan or for any other purpose. His statement of the origin of the indebtedness, the unsecured condition of it prior to September 3, and the agreement as to what property should be included in the deed, is fully corroborated by Waldron, who was cognizant of the whole transaction. He is further corroborated by the fact that the records of the bank for several years prior to the transaction in question disclose that McCullough had not been indebted to the bank at any time for any sum. He is also corroborated by McCullough's own admission that he never made demand upon the bank or Babcock, or Waldron, for return to him of the unrecorded deed, and that he never asked for a release of the Joliet property. Furthermore, Waldron testified that he had never prepared a deed for McCullough; that he was never a notary public or qualified to take acknowledgments; and that the bank had never

had in its possession a deed from McCullough to any property. The facts relating to the preparation of the deed are related by Mr. Johnston as follows: That he was informed by Babcock that he was to prepare the deed; that in the early morning of September 3 McCullough came to his office bringing his deeds to both the Joliet and Laurel property, in order that Johnston might have the correct descriptions, and gave them to him so that he might get them; that he prepared the deed which, after it had been acknowledged before James Johnston, a notary and brother of the attorney, was delivered to the bank. Upon this evidence the trial judge was fully justified in finding as he did, that the deed of September 3 expressed the true intention of the parties. If the bank never had in its possession the unrecorded deed to the Joliet property, and McCullough furnished to Mr. Johnston a description of the property in order that the deed might be prepared (and whether these were the facts depended upon the credit accorded to the witnesses), the conclusion cannot be avoided that McCullough understood what Johnston was to do, and what he had done when the deed was acknowledged; and, if this was the fact, the alleged agreement by Babcock to release the Joliet property could not have been made. There was therefore no mistake. Much less is there any substantial basis for an inference of fraud. The fact that McCullough did not read the deed before he executed it does not in any wise affect the case.

It is strenuously insisted, however, that even though there was no mistake, the bank is estopped to claim a lien upon the Joliet property because the evidence discloses, and the court found (Findings 5 and 8) that Babcock knew, when McCullough executed the deed to the bank, that McCullough and Dutton were negotiating for the exchange, and that Babcock advised and directed McCullough to make the exchange. In view of the fact that the court found that Dutton did not rely upon any representations by Babcock or any agreement between him and McCullough, these findings were wholly immaterial. Standing alone, they cast doubt upon what the trial judge had in mind

in making them, because they are somewhat equivocal in meaning. But, when we consider them in the light of the allegations of the answer and the evidence, which we must do under the rule of the maxim, that that is to be deemed certain which can be made certain (*Consolidated Gold & S. Min. Co.* v. *Struthers*, 41 Mont. 565, 111 Pac. 152), they become entirely clear in their meaning and consistent with the other findings. It will be noted that such conversation on the subject of the exchange as occurred between McCullough and Babcock, occurred before the deed to the bank was executed. Whether this was before or after the loan was effected and the agreement to secure it was made does not appear. It is denied by Babcock that any conversation occurred, other than that he expressed approval of the proposed exchange. But, assuming that it occurred as alleged, it related wholly to the condition as it existed prior to the execution of the deed to the bank, and not afterward. After this occurred McCullough was wholly divested of his right to sell the Joliet property, except subject to the bank's right, and could not, as a reasonable man, have thought otherwise. There is no evidence that he did think so ; for, while he testified that he informed Babcock some months afterward that he had made the exchange, he did not venture to testify that Babcock ever spoke to him on the subject after the close of the transaction with Babcock and before the conveyance was made to Dutton, or made any recommendation to him whatever. The findings referred to must therefore be construed as relating to the time prior to the execution of the deed to the bank. So understood, they are not inconsistent with the other findings or with the conclusion that the bank was entitled to claim the full benefit of its security. Moreover, when the exchange had been made, the bank's deed was put upon record. McCullough's alleged conversation with Babcock was not communicated to Dutton. He was not misled by any representations made by Babcock, nor even by Babcock's silence after he had been informed that the exchange had been effected. Babcock had performed his duty to the bank and to all persons who might thereafter seek to acquire title to the

property by putting the deed on record, and was under no obligation to disclose to Dutton, either before or after the exchange, that the bank was claiming an interest in it. It may be remarked here that the use of the word "direct," in finding 8, was evidently an inadvertence because there is no evidence justifying its use. According to McCullough's statement, Babcock did not go further than to commend and advise the proposed exchange.

The very purpose of the recording statutes is to require the owners or encumbrancers of real property to give notice of their [3] rights, by recording the evidence of them. When they have done so, they have done all that can be required of them, and may thereafter preserve silence, even though they know that others are about to deal with the property, unless the circumstances are such that they must disclose their rights. (*Cornish* v. *Woolverton,* 32 Mont. 456, 108 Am. St. Rep. 598, 81 Pac. 4; *Porter* v. *Wheeler,* 105 Ala. 451, 17 South. 221; *Ogden* v. *Ball,* 40 Minn. 94, 41 N. W. 453; *Waits* v. *Moore,* 89 Ark. 19, 115 S. W. 931.) Here the bank's deed was on record. It had notified Dutton of its claim as required by law. If it be conceded that the conversation between McCullough and Babcock actually occurred as testified to by McCullough, it was not communicated to Dutton; Dutton was not misled by it, but by the fact that he failed to consult the records and act upon the information afforded by them. Common prudence would have dictated this course. McCullough might well allege Babcock's statement as somewhat excusatory of his conduct, but that this is so cannot aid or avail Dutton. "There is no principle better established in this court, nor one founded on more solid considerations of equity and public utility, than that which declares that if one man knowingly, though he does it passively, by looking on, suffers another to purchase and expend money on land, under an erroneous opinion of title, without making known his claim, he shall not afterward be permitted to exercise his legal right against such person. It would be an act of fraud and injustice, and his conscience is bound by this equitable estoppel." (*Wendell* v. *Van Rensellaer,* 1 Johns. Ch. (N. Y.) 344.) This state-

ment of the rule by Chancellor Kent is recognized by all the courts, and would have application here had the bank failed to put its deed on record, or perhaps had the conversation of Babcock with McCullough, with the knowledge of Babcock, been communicated to Dutton before Dutton accepted his deed. As the case stands, the latter cannot claim that he was misled to his prejudice by anythi..g other than his own forbearance to exercise care and prudence. The essential element of equitable estoppel is wholly unproved in this case. The only legitimate conclusion one can arrive at touching the conduct of McCullough is that he intended to convey to the bank as he did, and thereafter conveyed to Dutton hoping that he would be able to pay off the debt to the bank and then release the property to Dutton.

It is argued that the court erred in excluding as immaterial [4] evidence of the fact that on September 3, 1908, and for two years thereafter, McCullough was financially responsible, and then became bankrupt, and also evidence of the fact that Dutton caused the clerk of Carbon county to make an examination of the records of the county to ascertain that McCullough's title was clear, and that he was informed by the clerk that it was. The evidence was properly excluded in both instances. As has already been said, when Babcock had put the bank's deed upon record, he had performed the bank's obligation to the public as to notice. The fact that McCullough subsequently became insolvent could not enlarge this obligation. Neither could the fact [5] that Dutton had made inquiry of the clerk and had been misinformed by him be shown in aid of his case. This would be tantamount to permitting a party to excuse his own fault by proving that of another; in this instance the clerk. The bank cannot be held chargeable in any measure because of the clerk's fault.

The trial judge called to his assistance a jury and submitted [6] to them several special findings to which they returned answers. Some of these the judge adopted; others he rejected, making his own findings instead. It is argued that he committed error in refusing to submit certain findings requested by

counsel.   It is well settled by the decisions of this court that in equity cases the judge may call a jury to his assistance if he chooses, but is not bound to do so.   If he does, he is not bound by the findings, but may reject them in whole or in part and make findings of his own.   Therefore he is not required to submit the whole case to the jury, but only such issues of fact as he may choose.   Whether he adopts the one course or the other, the ultimate result is to be regarded as emanating from the judge, and its correctness is to be determined by a review of his action, and not that of the jury by the standard of counsel's judgment as to what the jury ought to have been required to find.   (*Lawlor* v. *Kemper*, 20 Mont. 13, 49 Pac. 398; *Power* v. *Lenoir*, 22 Mont. 169, 56 Pac. 106; *Wetzstein* v. *Largey*, 27 Mont. 221, 70 Pac. 717.)

Other contentions made by counsel we do not think of sufficient merit to require special notice.

The decree is affirmed.

*Affirmed.*

MR. JUSTICE SANNER and MR. JUSTICE HOLLOWAY concur.