ANDERSON, RESPONDENT, *v.* COOK ET AL., APPELLANTS.

(No. 1,290.)

(Submitted March 19, 1901.  Decided May 6, 1901.)

*Water Rights—Owners in Common—Diversion of Water—
Sufficiency of Findings—Appeal—Question Considered—
Conflict of Evidence—Waiver of Objections—Briefs.*

1.   Where the record on appeal does not show what amendment, if any, was made to the complaint, error in allowing it will not be considered.
2.   Where the evidence is conflicting, the findings of the trial court will not be disturbed on appeal.
3.   The defendant in an action for diverting water contended that the reason that the water did not flow in plaintiff's ditch was due to the improper

construction. Findings were made that plaintiff and defendant had agreed to construct their ditches on a 12-inch grade, and that plaintiff's ditch was not on a 12-inch grade, and that one point in plaintiff's ditch was as high as the bottom of the main ditch where plaintiff's ditch connected therewith, but that plaintiff's ditch was sufficient to irrigate his land. The findings did not show the grade of plaintiff's ditch, or that the bottom of the main ditch was not below the agreed grade. The court found that the allegation of the complaint was sustained. *Held,* that the findings were sufficient to support a judgment for plaintiff.

4.  An owner in common of a water right, who takes water at a main ditch at a point above where the other owner takes water therefrom, is not entitled to withdraw an amount of water in proportion to his ownership of the water right, provided he leaves the proportionate share of the other owner in the main ditch, without regard to the seepage and evaporation of the remainder before it reaches the other owner, a mile distant.

5.  Where assignments of error are not mentioned in the brief of appellant, they will be considered as waived.

ON MOTION FOR REHEARING.

A brief disrespectful in language and tone to the supreme court will not be considered, and will be ordered stricken from the files and returned to counsel who prepared it.

*Appeal from District Court, Cascade County; J. B. Leslie, Judge.*

ACTION by Mose Anderson against W. W. Cook and another for the diversion of water. From a judgment in favor of the plaintiff, and from an order denying a motion for a new trial, the defendants appeal. Affirmed.

*Mr. Ransom Cooper* and *Mr. W. B. Sands,* for Appellants.

*Mr. William G. Downing* and *Mr. Sam Stephenson,* for Respondent.

MR. JUSTICE MILBURN delivered the opinion of the Court.

This is an appeal from the judgment in the case and from an order denying a new trial. It is a suit wherein the plaintiff demands damages from the defendants for injury to his crops on certain lands in his possession, the said injury alleged to have occurred through the wrongful acts of the defendants in the year 1896 in their having checked the flow of the waters in question in a certain common ditch running from a common

reservoir belonging to the parties to the action. Plaintiff also prays for equitable relief.

It is alleged by the plaintiff, and admitted by the defendants, that they built, owned and held in common a certain ditch running from the said reservoir down to the point at which plaintiff constructed another ditch to carry the waters from the common ditch to his irrigable lands. The complaint alleged that the ditch running from the reservoir and the reservoir itself were owned by the defendants and plaintiff in the following proportions,—that is to say, plaintiff was the owner of a one-third undivided interest in the common ditch and a one-third undivided interest less one-seventh of one-eighth in the said reservoir, and that the defendants owned the remaining interests in the ditch and reservoir; whereas the defendants alleged that they owned fifteen twenty-seconds of the ditch and reservoir. It is alleged in the complaint, and admitted in the answer, that the reservoir and the main ditch at all times during the spring and summer of 1896 contained an abundance of water for the irrigation of the lands of the plaintiff and of the defendants. The complaint also stated that the said ditches furnished, and there flowed through them, a large volume of water down to certain head gates on the lands of the defendants, and that at two points on said ditch the defendants, without right, wrongfully, and intending to deprive the plaintiff of the use of said water, which belonged to the plaintiff, and to which he was entitled, and in order to prevent the same from flowing on through said ditch to plaintiff's lands, erected head gates at two points on said ditch, and stopped and checked the flow of the water in said ditch, so that the same ceased to flow in quantities sufficient to irrigate any of plaintiff's crops. It was further alleged that the defendants so checked the water, and erected said head gates in such manner, as to check and stop the flow of said water wilfully and maliciously, intending to deprive this plaintiff of the same, and without any reason therefor; that the water so checked and stopped in said ditch over-flowed, and was needlessly wasted upon the lands of the defend-

ants, during the season of 1896, and during this time the plaintiff was deprived of the use of the waters, which were greatly in excess of the water needed and used by the defendants, and which would have been ample and sufficient to have irrigated the crops of the plaintiff; that, but for the wrongful checking of the flow of said water in said ditch, and the diversion of said water unnecessarily by the defendants as aforesaid, the said waters would have flowed down to his crops, and would have been ample and sufficient; that from the end of the main ditch running from the reservoir plaintiff continued said ditch down to and upon his said lands, and constructed laterals therefrom to and upon the lands sufficient to irrigate all of the said crops; and that by reason of the checking and diversion of said waters by defendants as aforesaid his crops were greatly damaged, to-wit, in the sum of $1,300.

The defendants demurred to the complaint, stating, among other things, that the complaint did not state facts sufficient to constitute a cause of action, and that the complaint was uncertain in that it did not state the quantity of water wasted by the defendants, and, further, that it did not state the quantity required by the plaintiff over and above the amount received by him. Subsequently a stipulation withdrawing the demurrer and giving the defendants ten days in which to file an answer was made and entered into by respective counsel, and duly filed in said cause. Thereupon the defendants answered, and denied that the said lands of the plaintiff were deprived of water through any acts, wrongful or otherwise, of the defendants; and denied that they, or either of them, or any one else, constructed two or any head gates on any ditch without right or wrongfully, or with the intention of depriving plaintiff, or any one else, of the use of the water, or to prevent the water from flowing to plaintiff's lands or elsewhere. They denied that they, or either of them, or any one else, constructed any head gates whatever which could prevent the free flow of water in the plaintiff's ditch or ditches, and denied that defendants' head gates, or either of

them, stopped or checked the flow of water from the main ditch to or into plaintiff's ditch or ditches; and denied that defendants, or either of them, checked the said waters, or constructed said head gates so as to check the water or to stop the flow thereof wrongfully, or maliciously, or otherwise; or that the said head gates, or any act or omission of defendants, or either of them, stopped or checked the flow of said water into plaintiff's ditch; or that the water so alleged to be checked overflowed or was maliciously wasted upon the lands of the defendants or elsewhere; and denied damage of any kind to the said crops. For further defense they set up that plaintiff's ditch was not at any time of sufficient capacity to convey water sufficient to irrigate any portion of plaintiff's lands, said ditch not being at any time "deep enough to enable sufficient water to flow through the same" for irrigating any portion of his lands.

Upon the trial of the cause, after the swearing of the jury, upon the offer of evidence by the plaintiff, one M. S. Darling, county surveyor, the first witness, being sworn to testify, the defendants objected to any evidence being received under the complaint, for the reason that it did not state facts sufficient which would warrant a court in granting the plaintiff any relief.

In addition to the facts admitted, there is proof, or evidence tending to prove, that:

The defendants, during the times referred to in the complaint, had two ditches leading from the main ditch,—one 2 feet 8 inches wide by 2 feet deep, and the other 3.5 feet wide by 2 feet deep. About one-half mile down the Anderson ditch from the end of the main company ditch was a high point in the bottom of the said Anderson ditch, this point being higher than a head gate opening into one of the defendants' laterals; 1.62 feet of water would run over this high point when the ditch was running full. In 1896 the head gate nearest the reservoir was a board across the lateral ditch, with dirt thrown in above it. Plaintiff did not get one-fiftieth of the water which he claimed. During May and June, 1896, there was plenty

of water, but plaintiff did not "get any to amount to anything."
The water went through the head gates of defendants. Plain-
tiff had water only about four days in May and June. After
he had entered suit, "water came on steady from July 3d to
August." After suit, water came across the high place spoken
of from 7 to 11 inches deep all the time, and 4½ feet wide.
When defendants "would keep their boards on so water would
come through, there was plenty for all." Water from the ditch
stood a foot deep over an area of 10 or 15 acres on the north
side of the company ditch on defendants' land. On July 15th
(after plaintiff went to Great Falls to institute suit) plaintiff
was getting all the water he wanted, and defendants had their
ditch full, and were getting probably three-fourths of the water.
About June 10th defendants were drawing the water off on
both sides of the main ditch, their laterals being full, and "the
main ditch as full as it could get," at which time "Anderson
was trying to irrigate with no water." In some places the main
ditch averaged 20 or 25 feet wide. At the lower end it aver-
aged 12 to 19 feet wide. The reason Anderson got no water
was that the main ditch was "that deep that it just simply
drew it off." Anderson built his ditch on the survey of one
Arnold. Said Arnold surveyed the Anderson ditch, laying it
on a grade of 12 inches to the mile. At least one of the laterals
of the defendants had a fall of 1 foot to 1,800 feet. The
capacity of the main ditch was 1,348 inches, that of the defend-
ants' first ditch 518 inches, and of the second 224 inches. The
head gates of the two laterals are about one-half mile apart.
The capacity of the Anderson ditch was 383 inches. All of
the parties had lands needing irrigation lying under the ditch,
and had means of using the water on the crops on said lands,
and actually used the same when they could severally get it.

Plaintiff offered to prove that he tendered his services to
defendants to build up the levees, but defendants' counsel ob-
jected, and the objection was sustained.

In the course of the trial a large number of witnesses were
examined, some of them being persons who qualified as having

had considerable experience as surveyors, and as users of water
for the purposes of irrigation. Numbers of maps were used
and appear as exhibits in this case. Counsel were permitted
by the court to examine these witnesses with special reference
to what was shown by the several maps, and in the course of
the testimony they frequently made statements that were very
material as affecting the rights of the parties, using the maps
to illustrate definitely what they meant to say. There is not
anything in the transcript to indicate to this court to what these
witnesses referred when using the maps, so that a large part
of what may have been very material and convincing evidence
in the minds of the jury or trial judge is altogether without
meaning to this court.

There was testimony in conflict with many of the alleged
facts stated above.

The defendants assign as error the court's overruling their
objection to the introduction upon the trial of any evidence
under the complaint upon the ground, then stated, that it did
not state facts sufficient to entitle the plaintiff to any relief.
The complaint is not conspicuous in the history of code plead-
ing as an example to be followed, for it is redundant in many
parts, and not explicit enough in others; but we do believe,
and therefore hold, after careful consideration, that it does
state facts sufficient to admit proof upon which the court, if
satisfied of the truth of the allegations, could afford relief.
The complaint was wide open to demurrer for uncertainty, but
this ground of demurrer was waived, as before herein stated.

The defendants complain that the court permitted the plain-
tiff to amend his complaint after objection to the introduction
of any evidence thereunder, after the jury was sworn, and then
refused to grant them a continuance of the said cause. It is
assumed in the briefs that the complaint was amended, but
the record, while showing that permission to amend was given,
does not disclose what, if any, amendment was made. We,
having no means of knowing whether anything, material or
otherwise, was added to the pleadings, cannot consider this
assignment of alleged error.

The contention of the defendants upon which they rely in the answer was: First, that they did not check the water; and, second, that, if the plaintiff did not get water to irrigate his crops, it was solely because he did not construct his own ditch "properly, and to a depth sufficient to enable the water to flow through the same when maintained to a height in the ditch leading out of said reservoir to which it could be maintained with safety, and without overflowing the banks of said last-named ditch."

To consider all the thirty-five particulars in which defendants claim in their brief that the decree of the court or its findings are erroneous, would require more space and labor than we think necessary. The main points are that the evidence fails to support the findings, and that the decree is not supported by the findings; the principal reliance being upon the ground that the evidence does not show that the defendants used more than their share of the water, and that, if they did, the plaintiff was not damaged by their doing so, for the reason that his ditch would not carry water under safe conditions, or conditions that would allow defendants to use the water in common with him. They further complain "because the decree compels the defendants to forego the use of water two days in each week merely because plaintiff will not put his ditch upon established grade."

As was the case in *Carron* v. *Wood*, 10 Mont. 500, 26 Pac. 388, a study of the evidence presented by the record shows that witnesses for the respective parties had made examinations and measurements of the ditches and head gates, and stated to the jury the dimensions and capacity thereof. As it often happens in controversies, there is considerable difference in the statements of witnesses for the respective parties as to the size, capacity, grade and condition of ditches, head gates, and the nature and effect of any obstructions which may be therein. It was the province of the jury to pass upon the credibility of the witnesses and the weight of testimony, and to make findings. They did so, and the findings were adopted by the court. It has been often announced by this court that, when there is

evidence to support the verdict or the findings, the same will
not be disturbed because there is conflicting testimony upon the
subject. The jury and court having found that the co-owners
of the main ditch had agreed that plaintiff should put his ditch
upon a uniform grade of 12 inches, appellant says that findings
1, 2, 3, 4 and 10 declare that plaintiff did not put his ditch
on a 12-inch grade, as agreed, and that, therefore, these findings
show that plaintiff was the one in fault. To find that a ditch
was not put on a 12-inch grade is not to declare that it was not
on a grade of, say, 11.95 inches, or perhaps as much as 25
inches. Finding 2, it is true, states that "there was a point
in the bottom of said ditch, about one-half mile east of the main
ditch, which was of the same height as the bottom of the main
ditch at the lower end of the main ditch where plaintiff takes
out his water;" but there is no finding that the end of said
main ditch was not below grade, or that the laterals of the plain-
tiff were not taken out within the half mile. The court and
jury found, besides, that the condition of the plaintiff's ditch
was sufficient to irrigate his crops, and, further, that, if the
defendants opened their lateral ditches (into which the head
gates let the water), this "would have prevented the plaintiff
from getting any water at all."

The court made its further finding "that the allegations of
said complaint have been sustained." We find nothing con-
flicting in the findings. We cannot say that they do not sup-
port the decree.

The parties did not own the water. They had a right to
the use of it in common. They did not have a prior right. The
defendants assume that they were at all times entitled to take
out two-thirds of the water, provided they left one-third thereof
in quantity in the main ditch. This is error. If there were
1,200 inches in the ditch, and they needed and took out 800
inches at, say, a point 100 feet below the reservoir, there would
be left 400 inches, one-third of the volume of water, with a
journey of more than one mile to go in warm weather, and over
a slow grade, and through a ditch from 144 inches to 228 inches

wide, subject to very great loss from seepage, evaporation and actual leakage. The slightest knowledge of the laws of nature will convince any reasonable person that the plaintiff would get a very small part of the 400 inches wherewith to make his desert lands produce remunerative crops.

Considering the relations of the parties to the contract under which they were to use the water, the findings against the defendants, the evidence in the case, and the obscure nature of the report of the testimony, we cannot say that the court did not do equity in its decree declaring that the plaintiff should have the sole use of the water during two certain consecutive days of each week. This works no hardship to the defendants, as it gives them the use of the water more than two-thirds of the time.

In the transcript appears an assignment "that the evidence is insufficient to sustain the finding that the plaintiff sustained $600 damages, or any damages whatever, at the hands of the defendants;" and it is further assigned that "the decree is against the law, because the damages awarded by the court to the plaintiff are more than three times the amount that plaintiff suffered, under any view of the evidence." Suffice it to say that each of these assignments is omitted from those relied on or mentioned in the brief of the appellant, and therefore no consideration is, under the rules, given to either in this opinion.

For the reasons given in this opinion the judgment, decree and order overruling the motion for a new trial are affirmed.

*Affirmed.*

## ON MOTION FOR REHEARING.

(Submitted June 3, 1901.   Decided June 7, 1901.)

MR. JUSTICE MILBURN delivered the opinion of the Court.

In the matter of the motion of appellants for a rehearing, the court is of the opinion that the motion should be denied. Examination of the argument of appellants filed with the motion discloses the fact that the language and tone of the brief are disrespectful to this court.   It will be sufficient in this connection to quote the following paragraphs from the brief, to-wit:

"I realize that compared with many of the matters which draw so heavily upon the time and attention of the court that this case is a small one.   It is, however, large for the parties interested, and its correct solution means as much or more to them as the proper disposition of the great cases means to the parties interested in them.

"It is of course to be regretted that the record is obscure in some parts, but this does not relieve the court from its obligation to study the record and try to understand it.

"Will the court kindly point out anywhere in the record any evidence which tends to overcome this *prima facie* case made by plaintiff against himself.

"Now, I do not believe and I cannot believe that this court is ready to establish so absurd a principle of equity jurisprudence as to hold that when defendants had need of water and there was abundance in the reservoir and they could fill their ditches and laterals and at the same time let the main ditch run as full as it could get, that they must stop the use of this water so as to let plaintiff run water up hill, because he was so shiftless that he would not put his ditch to a proper grade; and yet that is just what this court does say in its opinion.

"I do not believe that this court with its eyes open will perpetrate any such outrage as this.

"I deny the legal or moral right of this court to make the defendants assume the burden of compensating plaintiff for that which has resulted from his own fault, and the last quotation made above from the court's opinion shows that it has undertaken to do this very thing."

The only inference possible or proper to be drawn from this language is that it is not respectful. The arguments contained in the brief of counsel are not such as to convince this court that there is any reason why a brief, disrespectful in tone as this is, should be retained in the files and made the subject of further consideration. The brief is stricken from the files and the clerk is directed to return it to counsel for appellants. The motion for a rehearing is denied.

*Motion denied.*

Mr. Chief Justice Brantly: I concur.

Mr. Justice Pigott: I concur with the majority of the court in the order striking from the files the argument in the brief of counsel for appellants on motion for a rehearing, but I do not feel entirely satisfied with the judgment of affirmance and personally should not be averse to hearing the cause re-argued.

### Order.

Ransom Cooper, Esq., counsel for appellants, having made a satisfactory showing to this court that the language used by him in his brief on motion for a rehearing herein, was not intended to be disrespectful to the court, the order heretofore made striking said brief from the files and denying a rehearing is revoked so far as it denies the motion, the court adhering to the opinion that the said brief was disrespectful in tone; and the motion is permitted to stand for further consideration after said Cooper shall have filed with the clerk and served upon

counsel for the respondent, provided he shall do so within seven days from this date, an appropriate brief setting forth his reasons for asking for a rehearing. It is further ordered that this order be appended to the opinion heretofore filed in the matter of the said motion.

Done in open court this 10th day of June, 1901.

Motion for rehearing granted July 18, 1901.

---

## ON REHEARING.

(Submitted October 1, 1901.   Decided November 4, 1901.)

MR. JUSTICE MILBURN delivered the opinion of the Court.

This cause is before us on rehearing. We have again carefully considered the briefs and argument, additional briefs having been submitted. We are more fully convinced of the correctness of our decision, the reasons for which appear in the opinion rendered May 6, 1901.

It is more apparent now, after a rehearing, than upon the first consideration of this case, that the record is so obscure, and the evidence so conflicting, that we cannot say that the evidence does not support the findings which are set out in the judgment.

We again emphasize the fact that we have no means of knowing how material the evidence was which was given by those witnesses who referred to certain maps in such a way, indicating one unmarked point and another, that one cannot get any idea of their meaning in respect of such evidence.

The judgment and the order denying a new trial are affirmed.

*Affirmed.*