KING, RESPONDENT, v. PONY GOLD MINING COMPANY ET AL., DEFENDANTS; MORRIS ET AL., APPELLANTS.

(No. 1,514.)

(Submitted April 6, 1903.   Decided April 27, 1903.)

*Appeal—Record on Appeal—Notice of Intention to Move for New Trial—Practice—Stare Decisis—New Trial—Striking Attorneys' Names from Answer—Discretion — Affidavits— Insufficiency of Evidence—Record — Review—Pleading— General Denial—Waiver—Suits in Equity—Instructions— Evidence—Harmless Error — Corporations — Liability of Stockholders—Actions—Statute of Limitations—Briefs.*

1.  The notice of intention to move for a new trial is not a necessary part of the record on appeal from an order denying a new trial unless some objection is presented to the notice in the trial court which the party making desires to have the supreme court pass upon.

2.  Where the court has fallen into error upon a question of practice, and the correction of that error can in no way or manner injure any litigant in pending cases, the decision making the mistake should be overruled and the true and correct practice stated.

3.  Under Code of Civil Procedure, Section 1172, providing that, when a motion for a new trial is based on error in the exercise of the trial court's discretion, the motion must be made on affidavits, alleged error in striking certain attorneys' names from the answer cannot be considered on appeal where the record contains no affidavits.

4.  Sufficiency of the evidence to support the decree cannot be considered where it does not appear from the certificate of the trial judge settling the statement, or from the statement or bill of exceptions, that the record contains all the evidence or its substance.

5.  Where the statement on motion for a new trial stated that plaintiff called certain witnesses, who testified as therein set forth and "plaintiff rested," and that defendant called certain witnesses, whose testimony was also given, "whereupon defendants rested," it was not made to appear that all the evidence given was contained in the record.

6.  Alleged insufficiency of a general denial cannot be first raisd on appeal.

7. On appeal in a suit in equity, alleged error in instructions cannot be considered; the verdict being merely advisory.

8. Where, in appellant's original brief and in the oral argument, no reference was made to error in refusing to grant a motion for a nonsuit, an assignment based on such refusal will be considered waived.

9. Admission of incompetent evidence in an equity case is not reversible error, it being presumed that the court considered competent evidence only, except where it clearly appears from the record that the court actually considered the incompetent evidence in making up its findings, or where the record—containing all the evidence—does not disclose sufficient competent evidence to warrant the findings.

10. Where the record does not purport to contain all the evidence, it will be presumed that there was sufficient competent evidence to support the decree.

11. In a suit against stockholders of a corporation, defendants could not allege error in the admission in evidence of the report of a stockholders' meeting, when by subsequent amendment of their pleadings they admitted the existence of the evidence objected to.

12. Assignments of error in sustaining objections to certain questions cannot be considered where there is no showing as to what the answers would have been, and the questions give no indication of the specific evidence sought to be adduced.

13. Under Compiled Statutes of 1887, Division V, Section 457, providing that the stockholders of every company incorporated under the act shall be liable to the creditors of the company to the amount of unpaid stock held by them, etc., the liability of the stockholders arises only after execution on a judgment against the corporation has been returned unsatisfied, and limitations do not begin to run against an action against the stockholders until such time.

*Appeal from District Court, Lewis and Clarke County; H. C. Smith, Judge.*

SUIT by Rockwell King against the Pony Gold Mining Company, Samuel T. Hauser, William W. Morris, and Henry Elling. Judgment against Morris and Elling, and from the judgment and an order denying a new trial they appeal. Afterwards Elling died, and Thomas Duncan and others were substituted, as executors, in his place and stead. Affirmed.

STATEMENT OF THE CASE BY THE COMMISSIONER PREPARING
THE OPINION.

This is an appeal from the final judgment, and from an order overruling a motion for a new trial, in a suit brought by a judgment creditor of the Pony Gold Mining Company against Henry Elling, William W. Morris, and Samuel T. Hauser, as stockholders of said company, to recover an amount alleged to be due and unpaid upon the capital stock of the company held

or owned by said defendants, to be applied in the liquidation of said judgment. The Pony Gold Mining Company is also made a party defendant to the suit. The theory upon which plaintiff claims that there is an amount unpaid upon said defendants' stock is that practically the entire capital stock of the company was issued and delivered to said defendants Elling and Morris, as full-paid stock, for the purchase of certain property by the company, the value of which is alleged to have been far below the par value of said capital stock. It is alleged that the company issued and delivered to said defendants 499,991 out of 500,000 shares of the capital stock of said company (the par value being $10 per share) in payment for certain property which plaintiff claims was not worth over $250,000. It is also alleged that, in addition to the issuance and delivery of said stock, the company paid the defendants Elling and Morris $50,000 in cash, and executed and delivered a mortgage to them upon the property thus purchased for the sum of $150,-000. The record discloses that at the conclusion of plaintiff's case a motion for nonsuit made by the defendants was submitted to the court, which was sustained as to defendant Hauser, but denied as to defendants Elling and Morris. By this action of the court, defendant Hauser was eliminated from the case, and it proceeded to a final judgment against defendants Elling and Morris. The action was one in equity, and upon the trial certain special issues were submitted to the jury. The jury returned findings upon these issues in favor of plaintiff, which were adopted by the court. The court then made additional findings in plaintiff's favor, entered judgment against defendants Elling and Morris, and denied their motion for a new trial. From this action of the court, defendants Elling and Morris appealed to this court.

After the appeals were perfected, appellant Henry Elling died, and, by order duly entered, Thomas Duncan, Mary B. Elling, Mabel M. Hutt, and the Union Bank & Trust Company were substituted herein, as executors, in his place and stead.

For brevity, we will refer to the appellants as Elling and Morris in the following opinion.

Mr. Robert B. Smith, Mr. W. A. Clark, and Messrs. Cullen, Day & Cullen, for Appellants.

The court erred in striking out the new matter in the answer of the defendants Elling and Morris, relating to the statutes of limitations. (Wood on Statute of Limitations, Sec. 149; 1 Cook on Corporations, Sec. 225; Thompson on Liability of Stockholders, Secs. 292, 293; Compiled Statutes, 1887, First Div. Sec. 20; Longley v. Little, 26 Me. 162; Hunt v. Ward, 99 Cal. 612, 34 Pac. 335; Kelly v. Clark, 21 Mont. 291-342; Powell v. Oregonian Ry. Co., 36 Fed. 726; Stilphon v. Ware, 45 Cal. 110; Herman v. Coleman, 23 Pac. Rep. 62; Reddington v. Cornwall, 90 Cal. 49, 27 Pac. 44; Bank v. Pacific Coast Steamship Co., 103 Cal. 574, 37 Pac. 499; Jaggers Iron Co. v. Walker, 76 N. Y. 521; Hardman v. Sage, 124 N. Y. 25, 26 N. E. 354; Close v. Potter, 49 N. E. 686; Patterson v. Thompson, 86 Fed. 85; Blake v. Clausen, 38 N. Y. Supp. 514; Bassett v. Hotel Co., 47 Vt. 314; Sullivan v. Manufacturing Co., 20 S. C. 79; Losee v. Bullard, 79 N. Y. 404; Rector of Trinity Church v. Vanderbilt, 98 N. Y. 170; State Savings Bank v. Johnson, 18 Mont. 440.)

There was no statute of the territory of Montana in force at the time when these transactions took place, which would require the plaintiff to recover judgment against the corporation before suing the stockholders, and we think this court will not now establish such a doctrine. There are numerous authorities to the effect that suit may be brought against a stockholder without bringing suit against the corporation. (Terry v. Tubman, 92 U. S. 156; Camden v. Doremus, 3 How. 516-533; Stutts v. Handley, 41 Fed. 531; First National Bank v. Green, 64 Iowa, 445; Cleveland v. Marine Bank, 17 Wis. 545; Samainego v. Stiles, 20 Pac. 607; Barrack v. Gifford, 24 N. E. 259.)

Mr. T. J. Walsh, and Mr. F. P. Sterling, for Respondent.

The statute of limitations begins to run when the plaintiff's cause of action accrues or ripens. The appellants contend that the plaintiff's cause of action against them as stockholders in the Pony Gold Mining Company came into existence and was perfect immediately upon the accruing of the original indebtedness against the corporation in 1889. We say that it did not come into existence until the plaintiff had reduced his claim to judgment and had exhausted his remedies for the collection of the same from the corporation. (*Kelly* v. *Clark,* 21 Mont. 291; Thompson on Liability of Stockholders, Secs. 32, 36, 37; *Cuykendall* v. *Corning,* 88 N. Y. 129; *Handy* v. *Draper,* 89 N. Y. 334; *Rocky Mountain Bank* v. *Bliss,* 89 N. Y. 338; *Hardman* v. *Sage,* 124 N. Y. 25; *Christenson* v. *Quintard,* 36 Hun. 334; *Bains* v. *Babcock,* 27 Pac. 674; *Walter* v. *Merced,* 59 Pac. 136; *Vermont Marble Co.* v. *Declez Granite Co.,* 67 Pac. 1057; 2 Spelling on Corporations, 823; *Gillin* v. *Sawyer,* 44 Atl. 677; *Powell* v. *Ry. Co.,* 38 Fed. 187; *Wehn* v. *Fall,* 76 N. W. 138; *Hawkins* v. *Glenn,* 131 U. S. 319; *Hatch* v. *Dana,* 101 U. S. 205-214; Thompson's Commentaries, 3770; 2 Beach on Private Corporations, 569; 1 Cook on Corporations, 195-225f; Clark on Corporations, 239; *Crofoot* v. *Thatcher,* 57 Pac. 171; *Jones* v. *Whitworth,* 94 Tenn. 602; *Merritt* v. *Reid,* 10 Daly, 310; *Trustee* v. *Semple,* 80 Ala. 159; *Allibone* v. *Hager,* 46 Pa. St. 48; *Scoville* v. *Thayer,* 105 U. S. 143; Thompson on Liability of Stockholders, 291; *Younglove* v. *Lime Co.,* 33 N. E. 234; *Bronson* v. *Schneider,* 33 N. E. 233; *Hardman* v. *Sage,* 124 N. Y. 25.)


MR. COMMISSIONER CLAYBERG prepared the opinion for the court.


Before entering upon a consideration of the questions involved in this appeal, it is important to consider some of the preliminary objections presented by respondent's counsel to the record of the case, and to certain points relied upon by appellants in their brief. A great many questions are sought to be

raised in appellants' brief, many of which are objected to, and it seems to be the duty of the court to sift these objections, and determine what questions are properly before the court for consideration.    These preliminary objections are as follows:    (1) That this court cannot consider any alleged errors involved in overruling the motion for a new trial, as there is no notice of intention to move for a new trial in the record.    (2) That this court cannot consider the alleged error involving the striking of Cullen, Day & Cullen from the separate answer of defendant Hauser, because such error is an irregularity of the court below, which can only be presented to this court by affidavits filed with the court below on the motion for a new trial, and no such affidavits appear in the record.    (3) That this court cannot consider the alleged errors assigned upon the insufficiency of the evidence, because the record does not disclose that it contains all of the evidence introduced at the trial, or the substance thereof.    (4) That this court cannot consider whether the property conveyed by defendants to the company is of any other value than that alleged in the complaint, because defendants' denial of such allegations was general.    (5) That this court cannot consider the errors assigned upon the instructions of the court to the jury, given or refused, because the case is one in equity, and in equitable cases this court cannot review the instructions given or refused.    We shall consider these objections *seriatim*.

1.    As to the absence of notice of intention to move for a new trial:

In this case the record on appeal contains nothing aside from a statement of the case, properly settled and signed, and the judgment roll.    The notice of intention to move for a new trial is entirely omitted, and the question is whether this omission is proper.    The consideration of this question is necessarily limited to the conditions presented by the record in this case, and to none other, and this court desires to be understood that this opinion shall be construed as applicable only to similar conditions and cases.    For a full elucidation of the question, a reference to the statute seems necessary.

Under Section 1171, Code of Civil Procedure, a motion for a new trial may be based upon one or more of seven grounds therein stated. Section 1172 provides that when the application is made for a cause mentioned in the first, second, third and fourth grounds, stated in Section 1171, it must be upon affidavits, and if upon other grounds, either upon a bill of exceptions or statement of the case, at the option of the moving party. Section 1173 provides that within ten days after the verdict of the jury, or notice of the decision of court or referee, the party intending to move for a new trial must file with the clerk and serve upon the adverse party a notice of his intention, "designating the grounds upon which the motion will be made." Subdivision 3 of Section 1173 further provides: "When the notice of the motion designates as the ground of the motion the insufficiency of the evidence to justify the verdict or other decision, the statement shall specify the particulars in which such evidence is alleged to be insufficient. When the notice designates as the ground of the motion errors in law, occurring at the trial and excepted to by the moving party, the statement shall specify the particular errors upon which the party will rely. If no such specifications be made the statement shall be disregarded on the hearing of the motion."

It is apparent from the foregoing provisions of the Code that the only purposes of the notice of intention to move for a new trial are (1) to notify the adverse party of the grounds upon which the motion will be based; and (2) to guide the judge or referee in the settlement of the statement when proposed, in only allowing such grounds of motion to be stated or claimed therein as are set forth and relied upon in the notice of intention. When the statement is prepared in pursuance of the notice, it must specify particularly the insufficiency of the evidence, and the particular errors of law relied upon in the notice of intention. It is then made the duty of the judge or referee to "make the statement truly represent the case," and to settle and sign the same. In order that the statement "truly repre-

sent the case," the judge or referee must not allow to be included therein any grounds of motion not stated in the notice of intention and relied upon by the moving party. The notice of intention must therefore be referred to and considered in settling the statement, and if there is any objection to its form or substance, or if it has not been filed or served in time, such objections should be then presented, and the proper reference thereto should be inserted in the statement, so that the higher court, upon appeal, may consider and pass thereon. When the statement is settled, all the functions and offices of the notice of intention have been performed, and it need only be incorporated in the statement in cases where some point involving its consideration is desired to be presented to the supreme court. In all other instances there is no occasion to present it to the higher court. There having been no question raised in this record concerning the notice of intention, there was no occasion for it to be brought to this court.

We find the former decisions of this court in great confusion, as to whether the record on appeal from an order granting or refusing a motion for a new trial should contain the notice of intention. The first case where the question was considered is that of *First National Bank* v. *McAndrews,* 5 Mont. 251, 5 Pac. 879, where a motion was made to strike the statement on motion out of the transcript "for the reason that there is nothing in the record to show that there was either a motion for a new trial filed, or a notice thereof served upon the adverse party, as required by Section 287 of the Code of Civil Procedure." This court sustained the motion, and held that a decision upon motion for a new trial may not be reviewed on the record when the record does not show that any motion for a new trial was filed in the lower court, nor that any notice of motion, designating the errors complained of, was filed or served upon the adverse party. This decision was adopted and indorsed in the case of *Gum* v. *Murray,* 6 Mont. 10, 9 Pac. 447. It was next cited with approval in *Arnold* v. *Sinclair,* 12 Mont. 248, 29 Pac. 1124.

These decisions were all made while there was a statute in force requiring the appellant to furnish to this court, on orders appealed from in new trial proceedings, among other things, "a copy of the papers used on the hearing in the court below." (Section 425, Code of Civil Procedure, Revised Statutes of 1879; Section 438, Code of Civil Procedure, Compiled Statutes of 1887.)

In 1895 the legislative assembly enacted the present Code of Civil Procedure, and by Sections 1176 and 1738 made a new requirement as to the papers necessary to be sent to this court on appeals from orders granting or refusing new trials. Section 1176 provides: "The judgment roll, and the affidavits, or bill of exceptions or statement, as the case may be, used on the hearing, with a copy of the order made, shall constitute the record to be used on appeal from the order granting or refusing a new trial." Section 1738 provides: "On an appeal from an order granting or refusing a new trial, the appellant must furnish the court with a copy of the notice of appeal, of the order appealed from, and of the papers designated in Section 1176 of this Code." Under these sections, it is very apparent that the only papers properly constituting the record on appeal in the present case are the judgment roll, the statement, the order appealed from, and the notice of appeal.

Recalling the fact that under Section 425, Code of Civil Procedure, Revised Statutes of 1879, and Section 438, Code of Civil Procedure, Compiled Statutes of 1887, the papers constituting the record were a copy of the notice of appeal, the undertaking on appeal, the order appealed from, and "a copy of the papers used on the hearing in the court below. 'certified' by the attorneys, of the parties to the appeal or by the clerk, to be correct," we must conclude that, under the old practice, if the notice of intention was used in the court below on the hearing, a copy was required to be included in the record, certified to be correct, as provided by the statute. (*Arnold* v. *Sinclair,* 12 Mont. 248, 29 Pac. 1124.)

Under the present statutes, the only way in which the notice

of intention can be brought before this court is by insertion in the statement or in the bill of exceptions. It has a proper place in the statement or bill, as we have above seen, only when some objection is made to its sufficiency at the time of the settlement of the statement or bill, and therefore, unless some such objection is presented to the notice of intention at that time, so that it becomes necessary to incorporate it in the statement or bill, it has no place in the record on appeal.

In determining this question, it is very important to refer to the statutes and decisions of the supreme court of the state of California, because we find that in that state the same statutes were enacted, and the same questions arose as arise here, and had been definitely settled by the court of last resort of that state long prior to the adoption of our present Code of Civil Procedure, as hereinafter stated. Section 346, c. 5, p. 106, of the Laws of California of 1851, and Section 32, c. 54, p. 64, of the Laws of 1854, were practically identical with our Section 425, Code of Civil Procedure, Revised Statutes of 1879, and Section 438, Code of Civil Procedure, Compiled Statutes of 1887. Under the Laws of 1851 and 1854, *supra,* the supreme court of California held (as this court held under Section 425, Code of Civil Procedure, Revised Statutes of 1879, and Section 438, Code of Civil Procedure, Compiled Statutes of 1887), that the notice of intention was a necessary part of the record on appeal from an order granting or refusing a motion for a new trial. (*Calderwood* v. *Brooks,* 28 Cal. 151; *Wright* v. *Snowball,* 45 Cal. 654.) The legislature of California in the year 1874 adopted a new Code of Civil Procedure, changing the provisions of the old Code concerning the record on appeal from orders granting or refusing new trials, and substituting the present Sections 661 and 952 for Section 346. These last sections did away with the requirement of certifying to the supreme court the papers used on the hearing of motion for a new trial in the court below, and only required the papers mentioned in those sections to become parts of the record. The supreme court of California, in *Dominguez* v. *Mascotti,* 74 Cal.

269, 15 Pac. 773, uses the following language: "Formerly the notice was part of the record on appeal. But by careless legislation it is no longer so." The same court also said in *Pico* v. *Cohn*, 78 Cal. 384, 20 Pac. 706: "Formerly the notice was made a part of the record on appeal by express statutory provisions. But it is not so under the present Code. (Code of Civil Procedure, Sec. 670; *Girdner* v. *Beswick*, 69 Cal. 112, 10 Pac. 278; *Dominguez* v. *Mascotti*, 74 Cal. 269, 15 Pac. 773.) Nor is there any provision of the Code requiring that such notice shall be brought to this court by including it in the statement, or in any other manner. The papers necessary to be brought up are set out in Sections 661 and 952 of the Code of Civil Procedure, and the notice of intention is not one of them. The former statute having made the notice of intention a part of the record, we must assume that it was omitted from the present Code with a purpose. Being omitted from the section providing what papers shall constitute the record on appeal, and no provision being made for bringing it up in any other way, it is fair to presume that it was not intended to require it to be brought to this court at all. This leads us to the conclusion that it was the legislative intention that the notice should be the basis of the motion to be made in the court below, and that, upon the proper statement being filed, and the necessary motion made and passed upon by the court below, the notice has performed its functions, and is not a necessary part of the record on appeal, or to be presented here in any form. When the case comes to us, we must look to the statement or bill of exceptions, and the specifications in which the decision of the court below is not sustained by the evidence, and the specifications of errors of law, as our guide in reviewing the case, and to these alone. If a question is presented by such specifications, and is properly saved in the statement or bill of exceptions, this court will look no further, but must presume that the question was properly presented to the court below, and passed upon in its ruling upon the motion for a new trial. We do not put this upon the ground of waiver by the opposite party, as is done in some of the earlier

cases, but upon the sole ground that we must look alone to the statement or bill of exceptions for the questions to be determined, in the absence of any showing by the respondent that no notice, or an insufficient one, was given.   Undoubtedly the notice of intention is necessary, but if it has not been given, or has been given too late, that must be shown by the respondent, as against the settlement of the statement or bill of excepions, or at the time of and in opposition to the motion for a new trial; and, if the court below rules against him, hu must cause the facts necessary to present the question to be then included in the statement or a proper bill of exceptions, so that this court can determine whether a proper notice has been given or not.   The specifications in the statement or bill should conform to the notice of intention to move for a new trial.   If they do not, the opposite party should move such amendments thereto as will remove therefrom all matter foreign to the grounds stated in the notice, and in settling the same the court below should see that the statement does not go beyond the notice, either in the body of it or in the specifications.   If this is done, and the statement or bill is properly made up, no injury can result to any one from the failure to bring up the notice."

In 1895, as above stated, our legislature also enacted new provisions in regard to the papers which shall constitute the record on appeals from orders granting or refusing new trials. (See Sections 1176, 1738, Code of Civil Procedure.)   By the adoption of these two sections the legislative assembly enacted practically the identical provisions of Sections 661 and 952 of the Code of Civil Procedure of California.   The supreme court of that state has, since the adoption of their Code in 1874, frequently decided that the notice of intention need not be a part of the record on appeal.   (*Ferrer* v. *Home Mutual Ins. Co.,* 47 Cal. 427; *Hook* v. *Hall,* 68 Cal. 22, 8 Pac. 596; *Dominguez* v. *Mascotti,* 74 Cal. 269, 15 Pac. 773; *Pico* v. *Cohn,* 78 Cal. 384, 20 Pac. 706.)

All these decisions were made subsequent to the adoption of the Code of California of 1874, and prior to the change in our

Code of Civil Procedure. We having adopted Sections 1176 and 1738 from the Code of California, under the decisions of this court we must be held to have adopted such sections with the construction theretofore placed upon them by the highest court of the state of California. (*Davenport* v. *Kleinschmidt,* 6 Mont. 502-538, 13 Pac. 249; *First Nat'l Bank* v. *Bell S. & C. M. Co.,* 8 Mont. 32, 19 Pac. 403; *Stackpole* v. *Hallahan,* 16 Mont 40, 40 Pac. 80; *Murray* v. *Heinze,* 17 Mont. 353, 42 Pac. 1057, 43 Pac. 714; *Largey* v. *Chapman,* 18 Mont. 563, 46 Pac. 808; *Sharman* v. *Huot,* 20 Mont. 555, 52 Pac. 558, 63 Am. St. Rep. 645; *Stadler* v. *First Nat'l Bank,* 22 Mont. 190, 56 Pac. 111, 74 Am. St. Rep. 582; *Butte & Boston Consol. Mining Co.* v. *M. O. P. Co.,* 25 Mont. 41, 63 Pac. 825.)

Unfortunately, however, the California decisions above referred to were not called to the attention of this court when the question was first presented to it for consideration under the provisions of the Code of 1895, and by various decisions rendered since that time it has been held that the notice of intention is a necessary part of the record on appeal, and must come up in the statement. (*Grinnell* v. *Davis,* 20 Mont. 222, 50 Pac. 556; *Harrigan* v. *Lynch,* 21 Mont. 36, 52 Pac. 642; *Carr, Ryder & Adams Co.* v. *Closser,* 25 Mont. 149, 63 Pac. 1043; *In re Reilly's Estate,* 26 Mont. 358, 67 Pac. 1121; *Madigan* v. *Harrington,* 26 Mont. 358, 67 Pac. 1121; *Carr, Ryder & Adams Co.* v. *Closser,* 27 Mont. 94, 69 Pac. 560.)

This court has also held that the filing and service of this notice, and the omission thereof from the statement, if filed and served, is waived if the adverse party appears at the settlement of the proposed statement and offers amendments thereto. (*Harrigan* v. *Lynch,* 21 Mont. 36, 52 Pac. 642; *In re Reilly's Estate,* 26 Mont. 358, 67 Pac. 1121.) By such decisions this court tacitly admits that the omission of the notice from the record is not jurisdictional. Is not such holding tantamount to saying that the insertion of the notice in the statement is only jurisdic-

tional in cases where this court is requested to pass upon some question as to the validity or sufficiency of the notice itself, or as to its effect? We have seen that in such instances the party raising such question must cause the notice and his objections thereto to be incorporated in the statement or bill of exceptions.

We are of the opinion, after a careful and conscientious investigation and consideration of the statute, and cases upon similar statutes in other jurisdictions, that the functions of the notice of intention to move for a new trial are fully exhausted when the statement of the case or bill on such motion is settled, and that it has no further force or effect, except in cases where an objection is made to it upon the settlement of the statement which the party making desires to have this court pass upon. This court, in *Carr, Ryder & Adams Co.* v. *Closser,* 27 Mont. 94, 69 Pac. 560, recognizes the correctness of the California decisions, as shown by the following language: "Sections 1176 and 1738, *supra,* were adopted from the statutes of California after the supreme court of that state had interpreted them in *Pico* v. *Cohn,* 78 Cal. 384, 20 Pac. 706. While *Harrigan* v. *Lynch* and *In re Reilly's Estate, supra,* were under advisement, the members of this court examined the transcript in *Grinnell* v. *Davis, supra,* and found that the new trial proceedings were instituted after these sections had become law. It is probably true that in *Grinnell* v. *Davis* this court should have followed the interpretation which had been placed upon similar sections by *Pico* v. *Cohn,* and that an injustice was worked by not following it. Doubtless the court would have conformed to the practice established by *Pico* v. *Cohn,* had it been advised of that decision."

This leaves a single question for determination upon this branch of the case, and that is whether, under all the circumstances, the court will now correct the doctrine as laid down in *Carr, Ryder & Adams Co.* v. *Closser, supra.* This court, in the case of *Wetzstein* v. *Boston & Montana Consol. C. & S. Mining Co.,* 25 Mont. 135, 63 Pac. 1043, in treating of a question of practice, uses the following language: "The rule of *stare de-*

*cisis* does not here control, as it is not unusual, but proper, in matters of practice, to establish a correct and legal practice, if an error has been committed ill-advisedly in a former opinion of this court, provided that it is apparent that no substantial injury will be suffered by litigants by reason of reliance upon the precedent." In this opinion the court does not refer to the case of *Ramsey* v. *Burns,* 24 Mont. 234, 61 Pac. 129, in which this court uses the following language: "Decisions upon mere matters of practice, or interpretations of what may perhaps not improperly be called 'adjective law,' should never be disturbed unless it be apparent that injustice would result from adherence thereto." But it is well to note that the rule of practice affirmed in that case was one which, if changed by the court, would entail hardship upon litigants whose appeals had been taken to, and were pending in, this court. The principle of practice reaffirmed was in relation to the validity of bonds on appeal, and clearly, if the court overruled a former decision holding bonds on appeal of a particular form to be valid, all appeals in which a similar bond was filed would have to be dismissed, and thus very serious hardship would be inflicted upon appellants who had taken their appeals in reliance upon the good faith of a decision of the supreme court of the state. This court again said, in the case of *Carr, Ryder & Adams Co.* v. *Closser,* 27 Mont. 94, 69 Pac. 560: "That decisions upon mere matters of practice be not disturbed, even if erroneous, is of prime importance. It is most desirable that the practice be settled and known. Unless it be apparent that injustice will likely result from adherence to such decisions (*Ramsey* v. *Burns,* 24 Mont. 234, 61 Pac. 129), or that a change will not work a wrong, they should not be disturbed. Only the most cogent reasons can justify a court in overturning them." It will be noticed that *Wetzstein* v. *Boston & Montana Consol. C. & S. Mining Co., supra,* is not referred to in this decision. We thus see that this court has fallen into an inconsistency in the decisions of the three cases last cited, but we believe the true rule to be that if the court has fallen into error upon a question of

practice, and the correction of that error can in no way or manner injure any litigant in pending cases, the decision making the mistake should be overruled, and the true and correct practice stated.

Chief Justice Johnson, of the court of appeals of New York, in a dissenting opinion in the case of *Leavitt* v. *Blatchford,* 17 N. Y. 521-544, seems to state the rule correctly in the use of the following language: "To depart from a decision is undoubtedly an act by which a court incurs a high degree of responsibility, and it should certainly be satisfied that its course is such that the future judgment of the enlightened profession of the law will approve its determination. But when it is satisfied that an erroneous determination has been made, and that, too, with a full consideration of the merits of the question decided; when it sees that to correct it will render void no one's honest acts, nor disappoint any just expectation; when, in short, it is fully persuaded that there is no one reason why such a decision should again be made, except that it was once made before— then I think the court would be sacrificing substance to shadow if it refused to correct its error. Nor do I believe that by so doing a court would disturb the public confidence in the stability of its judgments. Courts are not inclined, any more than men out of courts, to admit that they have erred; and where the administration of justice is public, and must proceed upon reasons assigned for every judgment, there is little danger from the exercise, under the responsibilities necessarily attending its exercise, of the power which a court possesses to retrace its steps when it is satisfied that an error has been committed."

2.　As to striking the names of Cullen, Day & Cullen, as attorneys, from the answer of defendant Hauser:

We are of the opinion that this alleged error is not properly presented upon this appeal, for the following reasons, viz.: The statutes provide that, when the motion for a new trial is based upon this ground, it must be made upon affidavits. (Section 1172, Code of Civil Procedure.) No affidavits of this character appear in the record. This court has said, in *Cole-*

*man* v. *Perry,* 28 Mont. 1, 72 Pac. 42: "If error was committed, it was because of the irregularity or abuse of discretion on the part of the trial court in thus freely expressing before the jury an opinion upon the probable effect of evidence. If the language of the court so used constituted error, it is one of the designated causes for which a new trial may be granted. (Section 1171, Subd. 1, Code of Civil Procedure.) However, such error can only be shown by affidavit; otherwise it is not properly in the record or before this court (Section 1172, Code of Civil Procedure); and, as the alleged error was not so saved, consideration of the matter is not properly before this court upon this hearing."

3.  As to the alleged insufficiency of the evidence:

We are of the opinion that none of these errors are properly before the court for consideration. The record does not positively or even inferentially disclose that it contains *all* the evidence introduced at the trial below, or the substance thereof, bearing upon the errors assigned. This court, in the case of *State* v. *Shepphard,* 23 Mont. 323, 58 Pac. 868, had occasion to state very fully and clearly the law relative to the requirement that the record disclose all the evidence introduced at the trial below, or its substance, applicable to the errors assigned, in order to present the question of the insufficiency of the evidence to this court. A reference to that case upon this point would seem sufficient for the purposes of this opinion, without making extensive quotations therefrom.

A brief restatement of the law is as follows, viz.: This court cannot consider errors assigned upon insufficiency of the evidence to sustain the findings or judgment in cases where the record does not disclose that all the evidence introduced before the trial court, or its substance, bearing upon the errors assigned, is contained therein. (*State* v. *Shepphard,* 23 Mont. 323, 58 Pac. 868; *Currie* v. *Mont. Cent. Ry. Co.,* 24 Mont. 123, 60 Pac. 989; *T. C. Power & Bro.* v. *Stocking,* 26 Mont. 478, 68 Pac. 857.)

Under the authorities above cited there seem to be two ways by

which the record can explicitly disclose that it contains all the evidence, or the substance thereof, bearing upon the errors assigned, which was introduced in the court below, viz.: (1) The certificate of the trial judge settling the statement on motion for a new trial or bill of exceptions; and (2) from the statement or bill of exceptions itself.

The certificate of the trial judge to the statement on motion for a new trial in this case is as follows: "I, Henry C. Smith, judge of said district court, do hereby certify that the defendants having proposed a statement, and the plaintiff having offered certain amendments thereto, the same were settled by me, and engrossed in the foregoing statement, consisting of 117 typewritten pages, and the same is hereby allowed by me, and is correct. Done this 22d day of September, A..D. 1899. Henry C. Smith, Judge."

It will be perceived that this certificate is entirely silent as to the contents of the statement, save as to the number of pages it contains. No reference is made to the evidence, or the substance thereof. We find no declaration, or even inference, in the body of the statement on motion for a new trial, tending to show that all the evidence, or its substance, bearing upon the errors assigned, is contained therein. It commences as follows: "Be it remembered that on the 16th day of June, A. D. 1899, that being one of the days of the court, the plaintiff, to maintain the issues on his part, called and had sworn one Samuel T. Hauser, who testified as follows." Following this appears the testimony of witness Hauser. When his testimony was concluded, other witnesses were sworn, and at the completion of plaintiff's testimony the recital appears: "Plaintiff rested." Then it appears that certain motions for nonsuit were submitted to, and disposed of by, the court, which is followed by the recital: "And the said defendants, to maintain the issues on their part, called A. J. Seligman, who testified as follows." Other witnesses were called for the defendants, and at the conclusion of their examination we find the recital, "Whereupon defendants rested."

This court, in the case of *State* v. *Shepphard, supra,* after a careful review of the authorities on the statement or motion for a new trial in that particular case, uses the following language, which we adopt as conclusive in this case: "But it is not at all clear by this record that there was no other evidence before the jury than that included in the record, and, in the absence of an affirmative showing of a connected narrative or a positive statement that the entire evidence is therein, defendant has failed to avail himself of the point he would rely on."

4. As to the sufficiency of the general denial of allegations of value:

We are of the opinion that this court cannot consider this suggestion. Both parties to the suit tried the case upon the theory that this denial was sufficient. Testimony was introduced pro and con. This court said in the case of *Hamilton* v. *Huson,* 21 Mont. 9, 53 Pac. 101, "in the court below the parties treated the denial (a general one) as good and sufficient, and the case was tried on that understanding. This question cannot be raised now, the parties having treated the pleading as sufficient in the court below." See, also, *Sweeney* v. *Great Falls & Canada Ry. Co.,* 11 Mont. 523, 29 Pac. 19, and cases cited.

5. As to the errors assigned upon the instructions to the jury:

We are of the opinion that none of these errors can be considered on this hearing. This is an equity case, and the law is well settled, by various decisions of this court, that the verdict of the jury is merely advisory to the court, and that this court will not review errors assigned upon the instructions of the court to the jury. It is therefore no longer an open question in this state. (*Lawlor* v. *Kemper,* 20 Mont. 13, 49 Pac. 398, and cases cited; *Sanford* v. *Gates, Townsend & Co.,* 21 Mont. 277, 53 Pac. 749, and cases cited.)

Counsel assign as error the ruling of the court below in refusing to grant their motion for a nonsuit. In the argument in the original brief filed by them, we find no reference to, or reliance upon, this alleged error. No reference was made to it

in the oral argument. Under these circumstances, this error is presumed to have been waived, and will not be considered by the court. (*Murray* v. *Mont. L. & M. Co.*, 25 Mont. 14, 63 Pac. 719; *Maloney* v. *King*, 25 Mont. 138, 64 Pac. 351; *Anderson* v. *Cook*, 25 Mont. 330, 64 Pac. 873; *Matusevitz* v. *Hughes*, 26 Mont. 212, 66 Pac. 939, 68 Pac. 467; *Hayes* v. *Union Merc. Co.*, 27 Mont. 264, 70 Pac. 975.)

We therefore conclude—distinguishing the substantial from the unsubstantial, the substance from the shadow, in the record presented—that there are only two questions properly presented to this court for consideration, viz.: (1) Was error committed in the admission or rejection of evidence? (2) Was error committed in the rulings of the court below upon the question of statute of limitations, as pleaded by defendants?

As to the evidence:

Numerous errors are assigned as to the admission of what is claimed to have been incompetent evidence, but, under the view of the case which we have taken, all of these assignments can be considered and disposed of together. Before entering upon such consideration, for a better understanding of the principles of law involved, we deem it important to refer again briefly to the nature of the suit, and the condition of the record upon which these appeals are presented: The suit, as shown by the statement of the case preceding this opinion, was one in equity, brought by a judgment creditor of the Pony Gold Mining Company to recover from the defendants amounts unpaid upon the capital stock of that company, which are alleged to have been unpaid because of conveyances of property by the defendants to the company in consideration of the issue of a certain amount of fully paid capital stock, which property was of a value much less than the par value of such stock.

We have decided that the record does not disclose positively, or even inferentially, that it contains all of the evidence introduced at the hearing, and that therefore the appellants cannot attack the finding of the court on the ground of the insufficiency of the evidence. These findings are therefore conclusive upon

appellants. They are full and complete. Presumably, they were based upon competent evidence; and, the record not being shown to contain all the evidence, the further presumption is to be indulged that there was sufficient competent evidence given at the trial to support the findings.

It is the well-settled law that in an equity case the mere admission of incompetent evidence will not be sufficient to warrant a reversal, because of the presumption that the court below only considered competent evidence in making up its findings. (*Merchants' Nat'l Bank* v. *Greenhood,* 16 Mont. 395, 41 Pac. 250; *Forrest* v. *Forrest,* 25 N. Y. 501-510; *Sawyer* v. *Campbell,* 130 Ill. 186, 22 N. E. 458; *Gardner* v. *Gardner,* 23 Nev. 207, 45 Pac. 139; *McDonald* v. *Jacobs,* 85 Ala. 64, 4 South. 605; *Salt Lake F. & M. Co.* v. *Mammoth Min. Co.,* 6 Utah, 351, 23 Pac. 760; *Monroe* v. *Reid,* 46 Neb. 316, 64 N. W. 983; *King* v. *Murphy,* 49 Neb. 670, 68 N. W. 1029.) There is the following exception to this rule: Where it clearly appears from the record that the court actually considered the incompetent evidence in making up its findings, or where the record, containing all the evidence, does not disclose sufficient competent evidence to warrant the findings. It is not clearly apparent, however, in this case, that the court considered incompetent evidence; and, as we have already held the record not purporting to contain all the evidence, we cannot presume that there was not competent evidence before the court sufficient to sustain the findings. So that it appears that the exception above stated does not apply in this case.

Again, one of the most important allegations of the complaint was to the effect that the board of trustees of the Pony Gold Mining Company, of which the appellants were members, by resolution duly adopted, purchased certain property of appellants and one Samuel T. Hauser, and agreed, in consideration therefor, to issue to appellants and Hauser 499,991 shares of the full-paid capital stock of the company, and to give to said defendants the company's three notes, of $50,000 each, secured by mortgage from the company, on all the property so pur-

chased and conveyed. After the plaintiff had introduced the record of this meeting over defendants' objections, appellants amended their answer, alleging "that, while the books of by-laws and the minutes of the Pony Gold Mining Company show the issuance of 499,991 shares of stock of the Pony Gold Mining Company for the consideration of certain property mentioned in the complaint, the fact is as follows: That the said defendants Elling and Morris were the owners of all the property mentioned in the complaint; that, by a contract with their codefendant S. T. Hauser and the Pony Gold Mining Company, the said Hauser and the said Pony Gold Mining Company agreed to pay to these defendants for their property the following, to-wit: They were to cause the construction of a railroad from Sappington, in the county of Gallatin, to the mines and property of these defendants, above the town of Pony, and the said Pony Gold Mining Company was to erect, equip, and furnish, complete, a four hundred ton concentrator for the treatment of ores of the mines conveyed by these defendants to said company. That these defendants were to be paid two hundred thousand dollars—fifty thousand dollars in cash, and one hundred and fifty thousand dollars in deferred payments, by the note of the said Pony Gold Mining Company, secured by a mortgage on all the property of said company. In addition thereto these defendants were to receive 133,333 shares of the capital stock of said company. That the above and foregoing was the consideration, and the only consideration, received by these defendants, or either of them, for or on account of the property conveyed to S. T. Hauser and to the Pony Gold Mining Company by these defendants." By this proceeding of appellants, they asserted the existence of the very proof which they had objected to, and therefore clearly waived their objection to its introduction. Having relied upon the records of the company themselves in one regard, they could not be heard to say that the very same records were not properly identified and admissible. Under the principles above announced, this court

will not enter into the consideration of the question of the admissibility of the evidence complained of.

There were also various errors assigned to the rulings of the court upon the cross-examination of witnesses, but we do not perceive how any injury to appellants could have been occasioned by any of such rulings. Besides, there is no showing in the record what the answers would have been to the questions which were excluded. Neither do the questions give any indication of the specific evidence sought to be adduced. This court will not reverse a case upon such uncertain ground.

As to the statute of limitations:

We shall consider all the errors assigned upon this question together, because all are directed to the same end, and therefore will be disposed of by the same decision.

In order to decide this question, we must fully understand the nature of the liability sought to be avoided. One of the fundamental questions applicable to the consideration of all statutes of limitation is, when did the cause of action arise, and, therefore, when did the statute begin to run? If, under the statute imposing the liability, a suit might have been instituted against the stockholders immediately and directly, then such statute would at once have commenced to run. If, however, under the statute, it was necessary that suit be instituted and concluded against the corporation, and execution returned unsatisfied, before there could be said to be a liability against the stockholder, then the cause of action against the stockholder would not arise until that time, and the statute would only then begin to run. In other words, was the liability of the stockholder direct and primary, or secondary?

This court, in *Kelly* v. *Clark,* 21 Mont. 291, 53 Pac. 959, 42 L. R. A. 621, 69 Am. St. Rep. 668, says, "The shareholders are only secondarily liable," etc.

The liability of the stockholder in this case is based upon the provisions of Section 457 of the Fifth Division of the Compiled Statutes of 1887, which is as follows: "The stockholders of every company incorporated under the provisions of this

article [chapter] shall be severally and individually liable to the creditors of the company in which they are stockholders, to the amount of unpaid stock held by them respectively, for all acts of and contracts made by such company, until the whole amount of capital stock subscribed for shall have been paid in." Section 458, Fifth Division, Compiled Statutes, provides: "The trustees of such company may purchase mines, manufactories and other property necessary for their business, and issue stock to the amount of the value thereof in payment thereof, and the stock so issued shall be declared and taken to be full stock, and not liable to any further call; neither shall the holders thereof be liable for any further payments under the provisions of Section 457 of this chapter; but in all statements and reports of the company to be published, this stock shall not be stated or reported as being issued for cash paid into the company, but shall be reported, in this respect, according to the facts."

Plaintiffs claim that the trustees issued stock as full paid to the appellants on the purchase of property from them, very much in excess of "the amount of the value thereof," and that under the decision of this court in *Kelly* v. *Clark,* 21 Mont. 291, 53 Pac. 959, 42 L. R. A. 621, 69 Am. St. Rep. 668, there was unpaid upon said stock the difference between the actual value of the property and the par value of the stock. The theory of the enforcement of this statutory liability is that this unpaid balance on the stock is an asset of the corporation, and a trust fund for the benefit of its creditors. The bill filed is in the nature of a creditors' bill to reach and apply a portion of this equitable trust fund to the indebtedness. The indebtedness was against the corporation, and not against the stockholders. By this statute they are "liable to the creditors of the company in which they are stockholders to the amount of unpaid stock held by them respectively, for all acts of and contracts made by such company." Under the statute the enforcement of this unpaid balance is to be accomplished by the same means as would be used in case the stockholders had subscribed for the

capital stock of the company, and a portion of such subscription yet remained unpaid.

In the fourth edition of his excellent work on Corporations, at Section 200, Mr. Cook discusses this question as follows: "Although it may be considered settled law, at least in the United States, that unpaid subscriptions to the capital stock of corporations constitute a trust fund for the benefit of corporate creditors, yet such unpaid balances of subscription are not the primary or regular fund for the payment of corporate debts. Persons transacting business with a corporation look to the corporation itself for the payment of their debts. Credit is given to the corporation, not to the stockholders; and it is the natural order of business that the creditors of the corporation are to be paid by the corporation from funds in the corporate treasury. Ordinarily corporate creditors have no knowledge or concern about the subscription list, and unpaid or partially paid subscriptions are a matter entirely between the corporation and the subscribers. So long as the corporation meets its obligations in the ordinary course of business, corporate creditors have no need to concern themselves about unpaid subscriptions of stock. But when the corporation is in default and embarrassed, or for any reason fails to pay its debts, then its creditors have rights with reference to such unpaid subscriptions. They then have the right to know whether all the subscriptions for stock have been fully paid in, and, if not, they have the right to compel such payment. It accordingly becomes important to know at what point, in their efforts to collect what is due them, corporate creditors may cease to pursue the corporation, and proceed directly against its delinquent members. The well-established rule upon this point is that a corporate creditor's suit to enforce payment of unpaid subscriptions can be properly brought only after a judgment at law has been obtained against the corporation, and an execution returned unsatisfied. * * * By this is meant that judgment shall have been duly recovered against the corporation, and execution issued and

regularly returned unsatisfied. Nothing short of that exhausts the remedy against the corporation."

Of course, if the corporation has been declared a bankrupt, or is utterly insolvent, or has been dissolved, no proceedings need be taken against such company, because the law does not contemplate useless acts.

It is apparent, therefore, that the cause of action against appellants did not arise until after the execution against the company was returned unsatisfied, and that the rulings of the court upon the question of the statute of limitations were correct.

We are therefore of the opinion that the judgment and order appealed from should be affirmed.

PER CURIAM.—For the reasons stated in the foregoing opinion, the judgment and order denying motion for new trial, appealed from, are affirmed.

